No. 79-100

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

STATE OF NORTH DAKOTA,

Plaintiff and Respondent,

vs.

ART NEWBERGER d/b/a
AMUSEMENT CONSPIRACY,

Defendant and Appellant.

Appeal from:  District Court of the Fourth Judicial District,
In and for the County of Missoula.
Honorable John Henson, Judge presiding.

Counsel of Record:

For Appellant:

Goldman and Goldman, Missoula, Montana
Jon Oldenburg argued, Missoula, Montana

For Respondent:

Milodragovich, Dale & Dye, Missoula, Montana
Harold Dye argued, Missoula, Montana
Terry L. Adkins argued, Assistant Attorney General,
Bismarck, North Dakota

Submitted:  May 27, 1980
Decided:  JUL 2 - 1980

Filed:  JUL 2 - 1980

Thomas J. Kearney
_____
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from an action brought in Missoula County District Court for the recovery of certain monies allegedly owed to North Dakota State University on a contract for the promotion of a rock concert. Summary judgment was entered in favor of respondent State of North Dakota. Appellant Newberger appeals from the granting of the motion for summary judgment.

Appellant, through his business, Amusement Conspiracy, promotes rock concerts at several universities and colleges throughout the Northwest. Appellant is a resident of the State of California with his principal offices located in Encino, California. Appellant entered into a contract with North Dakota State University to promote a rock concert at the University in Fargo, North Dakota, on February 13, 1979. The contract contained a clause which provided that, in the event of cancellation of the concert, proceeds from advance ticket sales and certain promotion expenses would be refunded. Due to the illness of one of the performers, the rock concert was never held. As a result of the cancellation, appellant allegedly owed monies for promotion expenses and advance ticket sales.

On March 2, 1979, respondent filed a complaint in the District Court of the Fourth Judicial District, in and for the County of Missoula, to recover the monies allegedly owed. The complaint was filed in Missoula County because appellant was actively promoting another rock concert at the University of Montana fieldhouse in Missoula. The concert was scheduled to be held on March 2, 1979. In filing the complaint, respondent caused a summons to be issued.

-2-

However, appellant was never personally served with the summons.

In addition to the complaint, respondent also filed an affidavit in support of a prejudgment writ of attachment. Respondent sought to attach the proceeds of the Missoula concert to the extent that they would satisfy the debt allegedly owed to North Dakota State University. After testimony was taken at a hearing, the District Court issued an order for a writ of attachment, and the proceeds of the Missoula concert were attached in the amount requested.

On March 5, appellant, through his counsel, appeared to discharge the writ of attachment on the ground that it was improperly and irregularly issued. Appellant argued that the writ should be discharged because it was accompanied only by one undertaking, the surety, and section 27-18-204, MCA, required that it be accompanied by two. The motion to discharge was denied. On March 28, 1979, appellant again appeared before the District Court and moved that the action be dismissed for improper venue and lack of jurisdiction. That motion, too, was denied.

Prior to appellant's motion to dismiss, on March 20, 1979, respondent filed a request for thirteen admissions from appellant. Appellant, however, did not respond to the requests. On June 21, 1979, respondent notified appellant, because there had been a failure to answer the requests within the time provided by law, that the matters would be deemed admitted. Again, appellant did not respond.

On July 17, 1979, respondent filed a motion for summary judgment, based upon the admissions which had been obtained. Appellant then filed on August 13, 1979, a motion for the withdrawal of previous admissions and a request for an

extension of time so that the answers could be filed. A hearing was held with respect to the motions filed by the parties on August 23, 1979. The District Court denied appellant's motion for leave to file answers and entered summary judgment for respondent.

Appellant raises three issues for our consideration on this appeal:

(1) Whether the District Court erred in denying appellant's motion to dismiss for lack of jurisdiction?

(2) Whether the District Court erred in denying appellant's motion for leave to file answers to respondent's requests for admissions?

(3) Whether the District Court erred in continuing the writ of attachment over liens which may possibly have been superior to respondent's interest in the attached proceeds?

Appellant's first issue is to the effect that the District Court lacked in personam jurisdiction over him. Appellant is, of course, a nonresident, and in personam jurisdiction is conferred over nonresidents by Montana's "long-arm statute," Rule 4B, M.R.Civ.P., provided that certain criteria are met. That rule provides in pertinent part:

> "All persons found within the state of Montana are subject to the jurisdiction of the courts of this state. In addition, any person is subject to the jurisdiction of the courts of this state as to any claim for relief arising from the doing personally, through an employee, or through an agent, of any of the following acts:
>
> "(a) the transaction of any business within this state;
>
> ". . .
>
> "(c) the ownership, use or possession of any property, or of any interest therein, situated within this state;

". . .

"(e) entering into a contract for services to
be rendered or materials to be furnished in this
state by such person;"

In interpreting state "long-arm" statutes, we have
stated that the determination of whether a court may assume
jurisdiction over a nonresident defendant without offending
the principles of due process is a two-step process. "The
court must first look to the state statute to determine
whether the statute provides for the exercise of jurisdic-
tion under the particular facts of the case, and second, the
court must determine whether it would offend due process to
assert jurisdiction." May v. Figgins (1980), ___ Mont.
____, 607 P.2d 1132, 1134, 37 St.Rep. 493, 495, quoting 2
Moore's Federal Practice ¶4.41-1[1] at 4-421. We have also
recognized that there is a prevailing trend toward expanding
the permissible scope of state jurisdiction to the fullest
extent possible. May v. Figgins, supra, 607 P.2d at 1134,
37 St.Rep. at 496; Prentice Lumber Company v. Spahn (1970),
156 Mont. 68, 76, 474 P.2d 141, 145.

The basic rule with regard to due process limitations
imposed upon a state's power to exercise in personam juris-
diction over a nonresident defendant was stated in the
landmark case of International Shoe Co. v. State of Washington
(1945), 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95:

". . . due process requires only that in order to
subject a defendant to a judgment in personam,
if he be not present within the territory of the
forum, he have certain minimum contacts with it
such that the maintenance of the suit does not
offend 'traditional notions of fair play and
substantial justice.'" International Shoe, supra,
326 U.S. at 316.

The Supreme Court went on to elaborate the requirements
of the "minimum contacts" test:

-5-

"Whether due process is satisfied must depend rather on the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make a binding judgment in personam against an individual or corporate defendant with which the state has no contacts, ties or relations . . .

"But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and the protection of the laws of that State. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue." International Shoe, supra, 326 U.S. at 319.

The doctrine of state jurisdiction over a nonresident defendant has since been developed in a long line of cases. See Hanson v. Denckla (1958), 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283; McGee v. International Life Ins. Co. (1957), 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223; Perkins v. Benquet Consolidated Mining Co. (1952), 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485; L.D. Reeder Contractors v. Higgins Industries, Inc. (9th Cir. 1959), 265 F.2d 768; Travelers Health Ass'n. v. Virginia ex rel. State Corporation Comm'n (1950), 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154.

If a nonresident defendant's activities within a state are "substantial" or "continuous and systematic," there is a sufficient relationship between the defendant and the state to support jurisdiction even though the cause of action is distinct from, unrelated to, or does not arise out of the defendant's activity within the forum state. Perkins, supra, 342 U.S. at 446-447; Wells Fargo & Co. v. Wells Fargo Express Co. (9th Cir. 1977), 556 F.2d 413; Data Disc., Inc. v. Systems Tech. Assoc., Inc. (9th Cir. 1977), 557 F.2d 1280; see also Annot., 2 L.Ed.2d 1664, 1670.

Applying these principles to the case at bar, we find appellant has sufficient and substantial "minimum contacts" with this state for the District Court to have assumed jurisdiction of this matter. Appellant purposely avails himself of the privileges and benefits of the laws of this state by conducting his business of promoting rock concerts in Montana and throughout the Northwest. The record reveals that appellant has promoted concerts in Montana prior to the one in Missoula at which the proceeds were attached. As part of his business transactions, appellant also enters into contracts for services to be provided in this state. It is out of a similar and related contract that respondent's claim for relief or course of action arises. The basis of respondent's claim is, therefore, not totally unrelated to or distinct from the activities of appellant in this state. Further, at the time of this action, appellant was in possession of monies or personal property in this state which were alleged to have rightfully belonged to respondent. It is for this reason that respondent chose to file this action in Missoula.

It appears, therefore, that appellant has "minimum contacts" with this state; appellant was found in Montana, transacts business in Montana, had an interest in proceeds in Montana which were attached, and contracts for services to be provided in Montana. The facts of this case satisfy the requirements of Rule 4B(1)(a), (c) and (e), M.R.Civ.P.

We find further that, under the circumstances of this case and for the reasons aforementioned, the "traditional notions of fair play and substantial justice" were not offended by the District Court assuming jurisdiction. Respondent, by filing this action, in no way sought to

"vex," "harass" or "oppress" appellant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. To the contrary, respondent chose the Missoula District Court because both appellant and the proceeds could be found there. While there may have been, from the choice of this forum, some inconvenience to both parties, it is clear that no advantages or obstacles to a fair trial were thereby created. To deny jurisdiction of this cause would be to thwart the public interest this state has in providing a forum for companies doing business and for the carrying on and enforcing of proper business practices, such as the payment and collection of debts. See Prentice Lumber Company v. Spahn, supra. We find, therefore, that the District Court did not err in denying appellant's motion to dismiss for lack of jurisdiction.

In any event appellant through his counsel appeared without objection to jurisdiction over his person. He thereby waived any objection under Rule 12, M.R.Civ.P.

Appellant's second issue concerns whether the District Court erred in denying appellant leave to file late answers to admissions which respondent had previously obtained. Appellant contends that there were compelling circumstances which explained the failure to answer, since he was hospitalized for a substantial period of time.

Respondent served on appellant requests for thirteen admissions pursuant to Rule 36, M.R.Civ.P.; appellant did not respond within the time provided by law. After respondent gave notice to appellant that the matters would be deemed admitted, the District Court granted respondent summary judgment based upon the admissions. The following timetable is pertinent:

| March 20 | Respondent requested 13 admissions. No response. |
| June 19 | Appellant hospitalized. |
| June 21 | Respondent notified appellant that matters would be deemed admitted. No response. |
| July 17 | Respondent moved for summary judgment. |
| August 6 | Appellant released from hospital. |
| August 9 | Appellant moved for leave to file late answers. |

This Court has recently had two occasions to discuss the issue of whether leave to file late answers should have been allowed when previous admissions had been obtained by a party's failure to respond. Heller v. Osburnsen (1973), 162 Mont. 182, 510 P.2d 13; Morast v. Auble (1974), 164 Mont. 100, 519 P.2d 157. In Heller, the District Court allowed a party to file late answers because the delay was caused by a mixup in office procedure and not by bad faith. We upheld the discretion of the District Court, and, quoting 2 Moore's Federal Practice ¶15.05[2] at 1156, stated the general rule:

> "' * * * Failure to take any action within the period stated in the request results in an admission of the facts stated therein, although the court may permit the party to file his answer after the expiration of such time where the delay was not caused by a lack of good faith. Or in the absence of any prejudice to the party requesting the admission.'" Heller, 162 Mont. at 190, 510 P.2d at 17. (Emphasis added.)

In contrast, the District Court in Morast refused plaintiffs leave to file late answers. There, an eight and one-half month delay occurred and an intervening admonition during a pretrial conference had been given and names had been furnished to plaintiffs through interrogatories during discovery. On appeal, this Court held that the District

Court had not abused its discretion, emphasizing that a litigant's right to file a late response is "not a matter of right," but is rather "a matter resting within the discretion of the trial court and will not be disturbed on appeal unless there is a manifest abuse of discretion." Morast, 164 Mont. at 105, 519 P.2d at 159.

In this case, approximately a five-month delay occurred. During seven weeks in the latter part of the period, appellant was hospitalized. For the first three months, however, including the thirty-day period the law allows for a response to the requests, appellant was carrying on the normal daily affairs of his business. The transcript indicates that the District Court was well aware of this:

"THE COURT: Well, where was he [appellant] from March until June 19th?

"MR. OLDENBURG: I believe he was traveling in his business, Your Honor . . ."

At no time during this traveling or the period of his hospitalization did appellant or his counsel ask for an extension of time to reply to the requests or indicate any reason for the failure to respond. Where respondent served notice of the consequences of failing to answer the requests, which is not required by the rules, appellant simply chose not to respond. In other courts, arguments similar to those advanced by appellant here have fallen on "deaf ears." See Oscola Inns v. State Highway Dept. (Ga. 1975), 213 S.E.2d 27, 29. Under these circumstances, we find that appellant has not demonstrated a manifest abuse of discretion, and the District Court did not err in denying appellant leave to file late answers.

Appellant's final issue concerns whether the District Court erred in continuing the writ of attachment over liens

-10-

which possibly may have been superior to respondent's interest in the attached proceeds. At the hearing on the motion for leave to file late answers and the motion for summary judgment, appellant made a brief and passing reference to the fact that a third party allegedly held a perfected security interest in the proceeds. The trial court continued the writ of attachment over any other liens in the money.

In conducting our research, we find, as both parties acknowledged, that there is little authority on this issue. Where the situation has arisen before, the third party has intervened to assert his perfected security interest in the attached proceeds and subsequently moved to dissolve the attachment. See Barocas v. Bohemia Import Co., Inc. (Colo. 1974), 518 P.2d 850. We find that if the third party's interest is to be asserted at all, such intervention is necessary and defendant lacks standing to raise a third party's interest as a defense to the attachment. Therefore, without such intervention, the District Court did not err in continuing the writ of attachment over any liens which may possibly have been superior to respondent's interest in the proceeds.

Accordingly, the judgment of the District Court is affirmed.

John Conway Harrison
_____
Justice

-11-

We concur:

_____
Chief Justice

_____

_____

_____
Justices