No. 81-288

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

......................
.......................

FRED REED,

Petitioner,

vs.

AMERICAN AIRLINES, INC.,

Respondent.

ORIGINAL PROCEEDING:

Counsel of Record:

For Petitioner:

William Boggs argued, Missoula, Montana

For Respondent:

Keller, Reynolds, Drake, Sternhagen and Johnson, Helena, Montana
Kieth Keller argued, Helena, Montana

Submitted: December 7, 1981

Decided: February 18, 1982

Filed FEB 18 1982

<u>Thomas J. Kearney</u>
Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

This case is certified from U.S. District Court, the District of Montana, Missoula Division. Petitioner had filed a diversity action based upon the alleged negligence of American Airlines, Inc., in the handling and subsequent loss of petitioner's luggage in New York City. In that complaint, plaintiff Reed affirmatively alleged that the defendant corporation was "found within Montana." Defendant, American Airlines, filed a motion to dismiss the complaint for the reason that the United States District Court lacked personal jurisdiction over the defendant. The certification followed.

Certification presents the following issues:

"(1)  Was the defendant American Airlines found in Montana?

"(2)  If not, do the lettered subdivisions of Rule 4B(1) extend that jurisdiction to cases where the claim does not arise out of the doing of the acts mentioned in the lettered subdivisions?"

We find issue 1 to be dispositive.

Resolution of the first issue depends upon the facts found in this record. We therefore set them forth in detail.

Plaintiff traveled to New York City from Missoula, Montana, via Northwest Airlines on December 5, 1978. Plaintiff intended to transfer flights and continue to Nepal on British Airways. During the process of transfer, the plaintiff lost a case containing in excess of $2,000 worth of professional camera equipment. The case ultimately arrived in Nepal several weeks later but was found to be empty. The damages attendant this loss formed the basis of plaintiff's claim.

Except for an infrequent charter flight, American

Airlines does not fly into or out of Montana. It has no property nor personnel in Montana. It pays no taxes in Montana. American Airlines does solicit business in Montana by listings in 19 Montana telephone directories, by television advertising broadcast in Montana, and by furnishing material to travel agents in Montana. Occasionally American Airlines' personnel come to Montana to instruct Montana travel agents. The airlines has provided a service enabling Montana residents to call toll free, scheduling flights on American Airlines. Defendant's business originating through calls from Montana direct to American Airlines or through Montana-based travel agencies approximated $803,000 in 1980 and $992,000 from March to December of 1979.

The plaintiff is a citizen of the State of Montana. American Airlines is a Delaware corporation principally domiciled in Texas. The conduct of which plaintiff complains of defendant occurred in New York.

Under the facts above set forth, we hold that American Airlines was "found within Montana" and that there is jurisdiction in the United States District Court for the District of Montana.

Before the activities of a foreign corporation can create a physical presence within Montana, those activities must be substantial, continuous, and systematic as opposed to isolated, casual, or incidental. The activities must comprise a significant component of the company's business, although the percentage as related to total business may be small. See, e.g., O'Neal v. Hicks Brokerage Company (4th Cir. 1976), 537 F.2d 1266; Ratliff v. Cooper Laboratories, Inc. (4th Cir. 1971), 444 F.2d 745; Lee v. Walworth Valve Co. (4th Cir. 1973), 482 F.2d 297.

We must decide where American Airlines, under the facts here before us, fits within the legal framework provided. A strikingly similar fact situation was presented in Ladd v. KLM Royal Dutch Airlines (S.D. N.Y. 1978), 456 F.Supp. 422. In that case, plaintiff brought an action in Federal Court in Tennessee and the case was heard by a federal district judge in New York State pursuant to 28 U.S.C. 1407. The issue was whether the Tennessee court had jurisdiction. Defendant airline had its principal place of business in the Netherlands. It was not authorized to fly into or out of any place within Tennessee. It was not authorized to do business in Tennessee and paid no taxes in that state. The airline had no office or bank account in Tennessee and did not own or lease any property there. However, the airline did maintain toll free numbers within the state and advertised in six major telephone directories. The airline supplied promotional materials to Tennessee travel agents and periodically sent personnel into Tennessee for the purpose of instructing those travel agents. Travel agencies in Tennessee accounted for total business volume in 1976 of $323,304. On these facts, the court found the defendant airline to be present in Tennessee for purpose of conferring in personam jurisdiction.

Another similar case was decided by a federal district judge in Gullett v. Qantas Airways, Ltd. (M.D. Ten. 1975), 417 F.Supp. 490. In the Gullett case, the airline maintained toll free telephone listings in major urban centers within the state; it placed advertisements in national media circulating in the forum state; it supplied travel agents located in the forum with promotional materials; infrequently it sent its employees to the forum state for purposes of servicing the travel agents; total dollar volume of ticket sales in the subject state was a maximum of $91,529 for a twelve month period. The airline owned no property within the state nor maintained any offices in the state. Under these

-4-

facts, the Federal District Court held that the airline was present within the state for purposes of conferring in personam jurisdiction.

The plaintiff relies upon North Dakota v. Newberger (1980), 37 St.Rep. 1119, 613 P.2d 1002. Suit was instituted against defendant in the Missoula County District Court. Defendant had promoted a rock concert at the University of North Dakota, but because of illness of one of the performers, failed to go ahead with the concert. An action was commenced in Missoula, Montana, for the reason that defendant was engaged in promoting a subsequent concert at the University of Montana and since defendant had certain monies resulting from that promotion, plaintiff sought to institute the action in Missoula for purposes of acquiring control of those proceeds. The court in Newberger at p. 1123 said:

> "Appellant purposely avails himself of the privileges and benefits of the laws of this state by conducting his business of promoting rock concerts in Montana and throughout the Northwest. The record reveals that appellant has promoted concerts in Montana prior to the one in Missoula at which the proceeds were attached. As part of his business transactions, appellant also enters into contracts for services to be provided in this state. It is out of a similar and related contract that respondent's claim for relief or course of action arises. . . Further, at the time of this action, appellant was in possession of monies or personal property in this state which were alleged to have rightfully belonged to respondent. It was for this reason that respondent chose to file this action in Missoula.
>
> "It appears, therefore, that appellant has 'minimum contacts' with this state; appellant was found in Montana, transacts business in Montana, had an interest in proceeds in Montana which were attached, and contracts for services to be provided in Montana. The facts of this case satisfy the requirements of Rule 4B(1)(a), (c) and (e), M.R.Civ.P."

The record shows that the defendant in Newberger maintained his business in California. However, as indicated in the

facts described above, Newberger had physical presence in Montana different from that found in the case before us. Furthermore, the language in Newberger is dictum as the court said at p. 1123:

> "In any event appellant through his counsel appeared without objection to jurisdiction over his person. He thereby waived any objection under rule 12, M.R.Civ.P."

There is no contention that traditional concepts of "due process" are offended by the assertion of jurisdiction here. The due process requirements articulated in International Shoe Co. v. State of Washington (1945), 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, are satisfied.

The question here is whether defendant's activities are so substantial, continuous, and systematic that they constitute a physical presence within the State of Montana. We hold that under the facts in this record the defendant, American Airlines, was "found in Montana" for purposes of conferring in personam jurisdiction upon the United States District Court for the District of Montana. We feel that such holding comports with the trend of authority and with the spirit of Rule 4B(1).

_____
Justice

We Concur:


_____
Chief Justice

_____

_____

_____

_____
Justices

-6-

Mr. Justice Gene B. Daly dissenting:

I respectfully dissent from the majority opinion.

Under the law presently in effect in Montana, American Airlines (AA) cannot be considered "found within" Montana and therefore cannot be subject to the in personam jurisdiction of this State.

It is important, in the first instance, to emphasize the special facts of this case. The plaintiff flew from Montana to New York City on Northwest Airlines. He planned to transfer to British Airways and continue to Nepal. While at the New York airport, plaintiff alleges that somehow AA came into possession of his camera case, refused to give it back to him upon request, and insulted him. The plaintiff had not traveled on AA; there was no privity of contract between them. The plaintiff's claim of relief, therefore, is in no way related to AA's contacts with this state.

The issue here is how to interpret the words "found within" as they are used in Rule 4B, M.R.Civ.P. The pertinent part of Rule 4B reads: "All persons found within the state of Montana are subject to the jurisdiction of the courts of this state." The remaining lettered subdivisions of Rule 4B are not applicable here since they apply only when a plaintiff's claim of relief arises out of the activities of the nonresident defendant in the forum state. While this Court has extended in personam jurisdiction over nonresident defendants to its constitutional limits under the lettered subdivisions of Rule 4B, Prentice Lumber v. Spahn (1970), 156 Mont. 68, 474 P.2d 141, we have never done so under the first sentence of Rule 4B. But, we have applied the "two-step" test. The effect of the majority

opinion is to institute a change in the existing law by extending jurisdiction under "found within" to that allowable under due process and reducing the law to a one-step test. By this expansion of jurisdiction, the majority has ignored both the importance of the words "found within" and the two-step test we have used for determining in personam jurisdiction.

The well-established two-step test for interpreting Rule 4B provides that the court must, as a first step, look to whether the statute provides for the exercise of jurisdiction under the particular facts of the case, and applying the second step, the court must determine whether it would offend due process to assert jurisdiction. State of North Dakota v. Newberger (1980), _____ Mont. _____, 613 P.2d 1002, 1004, 37 St.Rep. 1119, 1121; May v. Figgins (1980), _____ Mont. _____, 607 P.2d 1132, 1134, 37 St.Rep. 493, 495, quoting 2 Moore's Federal Practice ¶4.41-1[1] at 4-421.

The first question here, then, is whether AA is "found within" the State of Montana, and the second question is whether the assertion of jurisdiction offends due process --that is, the "traditional notions of fair play and substantial justice." International Shoe v. Washington (1945), 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102, quoting Millikin v. Meyer (1940), 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278, 283. It is important to note at this point that the "minimum contacts" test of International Shoe and its progeny is used only to determine whether due process has been offended.

The majority has meshed this two-step test into one step by looking only to whether the traditional notions of

"due process" are offended by asserting jurisdiction here. The effect of its ruling is that "found within" must be interpreted, in the first instance, in terms of the most liberal constructions allowed to the "minimum contacts" test.

The major problem of applying the more liberal "minimum contacts" test, in the first instance, is the fact that there is no connection between plaintiff's claim of relief and AA's contacts with this state. Plaintiff did not buy a ticket to fly on AA and had no contact with AA prior to the alleged conversion of his camera case in New York. If he had bought a ticket from AA, it may have been possible to apply the more liberal "minimum contacts" interpretation to subdivision (a) of Rule 4B(1) "transacting business."

In Newberger this Court acknowledged that jurisdiction over a nonresident defendant may be asserted even though the cause of action did not arise out of the defendant's contacts with the forum state. Nevertheless, both this Court and the United States Supreme Court have recognized that, "[t]he contacts required upon which to base jurisdiction, consistent with due process, would be greater where the action is brought upon a claim not arising from these contacts with the state, than where the action does arise from the state's contacts." (Emphasis added.) May, supra, 607 P.2d at 1137, quoting 2 Moore's Federal Practice ¶4.41-1[1] at 4-414; International Shoe, 326 U.S. at 317-318. The majority has ignored the case law that sets a restrictive test for personal jurisdiction when the claim of relief does not arise from the nonresident's contacts with this state.

By ignoring this case law, the majority has failed to recognize the true issue of this case: how much more "substantial, continuous and systematic" must the nonresident's activity be under "found within" than under the lettered subdivisions of Rule 4B.

The majority relies upon two cases, Gullett v. Qantas Airways Ltd. (M.D. Tenn. 1975), 417 F.Supp. 490, and Ladd v. KLM Royal Dutch Airlines (S.D. N.Y. 1978), 456 F.Supp. 422, to support its conclusion that AA has sufficient contacts with this state to support the assertion of in personam jurisdiction. The precedential value of these cases is highly questionable here. In Gullett the plaintiffs had a contractual relationship with Qantas Airways that gave rise to the claim of relief, and in Ladd the New York federal court was construing a Tennessee statute which provided for the exercise of in personam jurisdiction over any person on "[a]ny basis not inconsistent with the Constitution of this State or the United States." TCA §20-235(f). Here, there is no contractual relationship between the parties, and we are not dealing with statutory language in any way similar to Tennessee's statute, Tennessee being a typical one-step state.

Only two cases give any guidance for the interpretation of "found within" as it is used in Rule 4B. McIntosh v. Heil Company (D. Mont. 1972), 350 F.Supp. 866, speaks directly to this point; and Newberger, 613 P.2d at 1005, speaks only indirectly.

In Heil, the nonresident corporation advertised in Montana, sent agents into Montana to bid on municipal contracts, and distributed products through a distributor

located in Billings. The corporation had no registered agent in Montana, owned no property, and maintained no office. Most importantly, the plaintiff's claim of relief arose out of the use of one of the corporation's trucks in Wyoming, so there was no connection between the claim for relief and the corporation's contacts with Montana. The sole question was whether the corporation was "found within" Montana.

In reasoning that "found within" must be distinguished from the test of minimum contacts and transacting business, the District Court in Heil said:

> "In People's Tobacco Company, Ltd. v. American Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed.587 (1918), the Supreme Court said that 'to be found' within a district a corporation must be present in the district by its officers and agents carrying on the business of the corporation. In United States v. Scophony Corp. of America, 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948), the Supreme Court said that the word 'found' denoted the concept of 'carrying on business' and that the words 'transact business' had a meaning broader than the words 'carrying on business.' The words 'found,' 'doing business,' 'transaction of any business' were at the time the Montana rules were adopted words of art the meanings of which were known to the bench and bar. The scholarly committee drafting the Montana rules used these words, and it is apparent that they were used as words of art. The all-encompassing phrase 'the transaction of any business' was used to provide a maximum protection to persons injured by reason of activity in Montana. <u>As to those actions arising in other jurisdictions or torts accruing in other jurisdictions the committee used the more restrictive words 'found within.'</u>" (Emphasis added.) 350 F.Supp. at 868.

The court in Heil then went on to put its own limitations on the words "found within":

> "<u>A corporation is not 'found within the state of Montana' unless it has agents or officers here upon whom process may be served or unless its business has been of such charac-</u>

ter and extent as to warrant the inference
that it has subjected itself to the juris-
diction of the state. It is generally held
that such an inference cannot arise where a
corporation merely solicits for business and
ships its products into the state and occa-
sionally sends an officer or agent into the
state for solicitation purposes. [Citations
omitted.]" (Emphasis added.) 350 F.Supp. at
868-869.

The plaintiff argues that Newberger is the main
controlling authority. In Newberger this Court found that
the defendant was "found within" this state. The defendant's
contacts with this state in Newberger, however, were much
more substantial than those of AA in this case. In
Newberger, the defendant was "found within" Montana because
of the following activity:

"The record reveals that appellant has pro-
moted concerts in Montana prior to the one in
Missoula at which the proceeds were attached.
As part of his business transactions, appel-
lant also enters into contracts for services
to be provided in this state. It is out of a
similar and related contract that respon-
dent's claim for relief or course of action
arises. The basis of respondent's claim is,
therefore, not totally unrelated to or dis-
tinct from the activities of appellant in
this state. Further, at the time of this
action, appellant was in possession of monies
or personal property in this state which were
alleged to have rightfully belonged to
respondent . . ." 613 P.2d at 1005.

Most importantly, the nonresident defendant was actually
present in Missoula at the time the action was commenced.

The acts of solicitation by AA are clearly less
substantial than those contacts of the nonresident defendant
in Newberger.

Given the higher degree of "substantial" and "con-
tinuous and systematic" activity necessary for a nonresident
corporation to be "found within" this state, it seems that
the acts of mere solicitation are not sufficient. While

-12-

International Shoe clearly held that mere solicitation would be enough to satisfy "presence" for due process purposes, or the one-step type of test, that is not what we are concerned with here. It was recognized in International Shoe, itself, that where the claim of relief is not connected with the nonresident corporation's activity in a forum state, the extent and quality of corporate contacts must be greater. International Shoe, 326 U.S. at 317-318; see also prior reference to May, 607 P.2d at 1137.

Given this greater standard of "found within," mere solicitation does not constitute the "substantial" activity necessary to find in personam jurisdiction where the claim of relief is in no way connected to the solicitation in the forum state. I would, therefore, dismiss this case on the grounds that AA is not subject to the in personam jurisdiction of the State of Montana.

_____
Justice

I concur in the foregoing dissent.

_____
Chief Justice