**FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver of the Western National Bank of Lovell, Wyoming, Plaintiff-Appellant,**

v.

**BRITISH–AMERICAN INSURANCE COMPANY, LTD., Defendant-Appellee.**

No. 86–6639.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 6, 1987.

Decided Sept. 29, 1987.

E. Whitney Drake, Washington, D.C., and Marshall G. Mintz, Los Angeles, Cal., for plaintiff-appellant.

John P. McKay, Los Angeles, Cal., for defendant-appellee.

Before NELSON, HALL and THOMPSON, Circuit Judges.

NELSON, Circuit Judge:

The Federal Deposit Insurance Corporation ("FDIC") appeals the district court's dismissal of its action against the British-American Insurance Company ("BAIC") for lack of personal jurisdiction. FDIC initiated this action as the receiver of Western National Bank to recover $2 million of the bank's funds that were allegedly fraudulently transferred to BAIC for the purchase of its Fiji branch. We note jurisdiction under 28 U.S.C. § 1291 (1982) and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The parties agree that the facts are essentially undisputed. Milton Polland, a resident of Los Angeles, California, was a representative of Anant Kumar Tripati and his corporation, the Fort Lincoln Companies. Sometime prior to May 1983, Polland called David Thurlow, General Manager of BAIC's home office in Nassau, Bahama Islands, to solicit the purchase of BAIC's Fiji Branch. Polland and Thurlow communicated via telephone and letter between Nassau and Los Angeles, and Polland even-

tually flew to Malaysia and met with Thurlow to negotiate the terms of the contract.

After BAIC and Polland reached an agreement, BAIC executed the contract in Nassau, and sent it by mail to Polland in Los Angeles for execution. The contract included provisions stating that the contract would be governed by Fiji law, that notices would be sent to Polland in Los Angeles, and that the "Place of Completion" would be Nassau. The contract also indicated that Polland had to obtain all government approvals from the Dominion of Fiji necessary to consummate the lawful transfer of the Fiji branch office. In addition, Polland had to form a new Fiji company, Southwest Pacific Assurance Co., Ltd. ("Southwest"), for the purpose of acquiring and operating BAIC's Fiji office. The agreed purchase price was $2 million.

On May 2 and 3, 1983, Justin Tierney, a vice president of one of BAIC's subsidiaries, was in Los Angeles on an unrelated matter. He had no prior knowledge or involvement in the sale agreement. George Ragsdale, BAIC's counsel in North Carolina, called Tierney in Los Angeles, and asked him to stay a few days in order to pick up the $2 million cashier's check from Polland. Polland signed the contract in Los Angeles and used funds from a Fort Lincoln Companies' account to obtain the cashier's check, which was drawn on Imperial Bank in Los Angeles. On May 5, 1983, after Polland delivered the check to Tierney, Tierney endorsed the check, went to the Bank of America branch near the Los Angeles airport, and requested the bank to wire-transfer the money to BAIC via the Bank of America in the Bahamas.

Polland never obtained proper approval from the Fiji government prior to the transfer, and BAIC neglected to give notice of the transfer to the Fiji Commissioner of Insurance until the end of May 1983. During that period, the Federal Bureau of Investigation began to investigate Tripati, an officer of Southwest, for alleged embezzlement and wire fraud. On December 7, 1983, the Fiji Commissioner of Insurance informed BAIC that the transfer to Polland was not approved and that the Commission-

er had seized control of the Fiji branch. FDIC, as the receiver of the insolvent Western National Bank of Lovell, Wyoming (the source of Fort Lincoln Companies' funds), and as judgment creditor of Tripati and the Fort Lincoln Companies, initiated an action against BAIC to set aside the allegedly fraudulent conveyance of the Fiji branch for $2 million. On October 20, 1986, the district court dismissed the action for lack of personal jurisdiction over BAIC. FDIC timely appealed.

## ISSUE PRESENTED

Whether the district court erred in dismissing the action for lack of personal jurisdiction.

## DISCUSSION

### I. STANDARD OF REVIEW

■■■■ The district court's determination whether personal jurisdiction can be exercised is a question of law, reviewable de novo when the underlying facts are undisputed. *Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396 (9th Cir.1986). The plaintiff bears the burden of establishing that the court has personal jurisdiction. *Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir.1986).

### II. ANALYSIS

■■■■ In order to establish personal jurisdiction over BAIC, a nonresident defendant, FDIC must show that the forum state's jurisdictional statute confers personal jurisdiction over BAIC, and that the exercise of jurisdiction accords with federal constitutional principles of due process. *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir.1987). Because the California statute extends jurisdiction to the maximum extent permitted by due process, Cal.Civ.Proc. Code § 410.10 (West 1973), the jurisdictional inquiries under the state statute and due process principles can be conducted as one analysis. *Pacific Atl. Trading Co. v. M/V Main Express*, 758 F.2d 1325, 1327 (9th Cir.1985). Due process requires that nonresident defendants have certain minimum

contacts with the forum so that maintenance of a suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

■ Courts may exercise either general or specific personal jurisdiction over nonresident defendants. *Fields,* 796 F.2d at 301. General jurisdiction exists when the nonresident has " 'substantial' or 'continuous and systematic' contacts with the forum state." *Id.* (quoting *Haisten,* 784 F.2d at 1396). Since FDIC does not contend that the court has general jurisdiction over BAIC, the district court's order should be reviewed to determine whether FDIC established specific (*i.e.,* limited) jurisdiction.

This circuit has established a three-part test for analyzing whether specific jurisdiction may be exercised:

(1) the nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or residents thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Lake,* 817 F.2d at 1421 (citations omitted); *see also Corporate Inv. Business Brokers v. Melcher,* 824 F.2d 786, 789 (9th Cir.1987). Because we find that the exercise of personal jurisdiction over BAIC is unreasonable, we need not determine whether the first two prongs of the test are satisfied. *Fields,* 796 F.2d at 302; *Insurance Co. of N. Am. v. Marina Salina Cruz,* 649 F.2d 1266, 1270 (9th Cir.1981); *Rocke v. Canadian Automobile Sport Club,* 660 F.2d 395, 399 (9th Cir.1981); *see also Asahi Metal Indus. Co. v. Superior Court,* — U.S. —, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987) (Stevens, J., concurring) (noting that a finding of unreasonableness is a sufficient basis for defeating the assertion of

personal jurisdiction); *cf. Corporate Inv. Business Brokers,* 824 F.2d at 788–91.

■ Jurisdiction may be exercised reasonably if " 'under the totality of the circumstances the defendant could reasonably anticipate being called upon to present a defense in a distant forum.' " *Olsen by Sheldon v. Government of Mexico,* 729 F.2d 641, 649 (9th Cir.) (quoting *Taubler v. Giraud,* 655 F.2d 991, 993 (9th Cir.1981)), *cert. denied,* 469 U.S. 917, 105 S.Ct. 295, 83 L.Ed.2d 230 (1984). This circuit has identified seven relevant factors in determining the reasonableness of asserting jurisdiction over a nonresident defendant:

(1) The extent of purposeful interjection into the forum state;

(2) The burden on the defendant of defending in the forum;

(3) The extent of conflict with the sovereignty of defendant's state;

(4) The forum state's interest in adjudicating the dispute;

(5) The most efficient judicial resolution of the controversy;

(6) The importance of the forum to plaintiff's interest in convenient and effective relief;

(7) The existence of an alternative forum.

*Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 840 (9th Cir.1986); *Lake,* 817 F.2d at 1421–22; *Corporate Inv. Business Brokers,* 824 F.2d at 790. Each factor will be analyzed below and balanced into the reasonableness inquiry.

*1. Purposeful Interjection*

The district court concluded that Tierney performed the "ministerial act of an employee used as a delivery person" during his visit to Los Angeles and that this was insufficient to establish purposeful direction of BAIC's business activities toward California. We agree. Polland, not BAIC, directly solicited the sale of the Fiji branch by calling the Nassau office; the contract negotiations were conducted in Malaysia; and Fiji law was designated as the governing law. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 482, 105 S.Ct. 2174, 2187, 85 L.Ed.2d 528 (1985) (not-

ing that although a governing law provision standing alone is not sufficient to confer jurisdiction, "[n]othing in our cases ... suggests that a choice-of-law *provision* should be ignored in considering whether a defendant has 'purposefully invoked the benefits and protections of a State's laws' for jurisdictional purposes"). The fact that Polland, who solicited the sale agreement, was a California resident was fortuitous, not purposeful.

It is clear that a contract alone is not sufficient to establish purposeful interjection into a forum state. *See Burger King Corp.*, 471 U.S. at 478–79, 105 S.Ct. at 2185; *Hirsch v. Blue Cross, Blue Shield*, 800 F.2d 1474, 1480 n. 3 (9th Cir.1986). The negotiations and contemplated future consequences of the contract (*i.e.*, whether continuing contacts with California were envisioned) must be considered in analyzing BAIC's purposeful interjection of its activities into California. *See Burger King Corp.*, 471 U.S. at 479, 105 S.Ct. at 2185. In the instant case, no future relationship was contemplated; the contract was simply a one-time agreement. *Cf. id.* at 479–80, 105 S.Ct. at 2185–86 (long-term franchise agreement contemplated continuing and wide-reaching contacts); *Corporate Inv. Business Brokers*, 824 F.2d at 790 (continuing benefits would be derived from association with franchisor in forum state). Tierney's remaining in Los Angeles to pick up the $2 million payment and wire it to Nassau does not rise to the level of "affirmative conduct ... which allows or promotes the transaction of business within the forum state." *Decker Coal Co.*, 805 F.2d at 840. The subject of the contract was in Fiji, the governing law was Fiji's, and the defendant's only significant performance in California was picking up a check for an already completed and executed contract. This circuit has recognized that the receipt of payment alone for services rendered outside the forum state is not sufficient to support personal jurisdiction. *Pacific Atl. Trading Co.*, 758 F.2d at 1329.

FDIC attaches some significance to the use of California banks by Tierney. First, the fact that the cashier's check was drawn on Imperial Bank is of little significance; the bank on which the check was drawn was a result of Polland's discretion and unilateral activity, which is an inappropriate consideration for the assertion of jurisdiction over BAIC. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416–17, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984). Second, the use of the facilities of national banks such as the Bank of America (*i.e.*, Tierney wired the money to Nassau via Bank of America), whose powers are granted by the National Bank Act, 12 U.S.C. §§ 21–216d (1982), does not amount to the invocation of state benefits. *Thomas J. Palmer, Inc. v. Turkiye Is Bankasi A.S.*, 105 Cal.App.3d 135, 153–54, 164 Cal.Rptr. 181, 192 (1980).

BAIC's key nexus to California—the temporary physical presence of Tierney in California—is not sufficient to overcome the lack of any indicia of a calculated effort by BAIC to conduct business in California. An analogous fact pattern in a Fifth Circuit case supports this conclusion. In *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026 (5th Cir.1983), *cert. denied*, 466 U.S. 962, 104 S.Ct. 2180, 80 L.Ed.2d 561 (1984), the court declined to exercise specific jurisdiction over a nonresident corporation although: the defendant corporation agreed to purchase goods to be manufactured in the forum state; payment for the orders was to be made in the forum state, extensive communications were exchanged between the parties from their respective states prior to executing the agreement; *officers of the defendant corporation traveled to the forum state to close the deal;* and the contract was formally created by the defendant's acceptance in the forum state. The court found the above factors "relevant," but insufficient to outweigh the fact that the contract required no significant performance by the defendant in the forum state, involved only one transaction, and was governed by the law of the defendant's residence. In addition, the plaintiff solicited the transaction and substantially negotiated it outside the forum state. *Id.* at 1029–32. The basic quality and nature of the defendant's contact with the forum state, therefore, on balance,

outweighed the defendant's forum contacts. The facts of the instant case lead to a similar conclusion.

In sum, the transaction between Polland and BAIC appears to be the "random," "fortuitous," or "attenuated" type of contact insufficient to support jurisdiction without violating the principles of fair play and substantial justice. *Burger King Corp.*, 471 U.S. at 486, 105 S.Ct. at 2189. In addition, "[t]he smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise." *Insurance Co. of N. Am.*, 649 F.2d at 1271. This factor, therefore, weighs against jurisdiction in California.

### 2. Burden of Litigating in California

█ The burden of litigating in a foreign forum has become less significant as a result of advances in communication and transportation. *Decker Coal Co.*, 805 F.2d at 841; *Corporate Inv. Business Brokers*, 824 F.2d at 791. However, the law of personal jurisdiction is "asymmetrical." *Insurance Co. of N. Am.*, 649 F.2d at 1272. The primary concern is for the defendant's burden. *Id.* In a case such as this, in which the defendant "has done little to reach out to the forum state," the burden of defending itself in a foreign forum militates against exercising jurisdiction. *Id.*

### 3. Conflict with Foreign Sovereignty Interests

Although not a dispositive consideration, a foreign nation presents a higher sovereignty barrier than another state within the United States. *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1333 (9th Cir.1984), *cert. denied*, 471 U.S. 1066, 105 S.Ct. 2143, 85 L.Ed.2d 500 (1985). Since the defendant is a resident of a foreign nation, the subject of the controversy is a Fiji corporation, and the contract designates Fiji law as the governing law, this factor also tends to undermine the reasonableness of asserting personal jurisdiction over BAIC.

### 4. Interest of the Forum State

If California law governed the dispute, California would have a substantial interest in adjudicating it. *See Jacobs/Kahan & Co. v. Marsh*, 740 F.2d 587, 592 (7th Cir. 1984). The parties, however, designated a foreign forum (*i.e.*, Fiji) in the contract's controlling law provision, and California's interest in adjudicating this dispute in its courts is not particularly great. California's interest would be greater if the non-residents in this case engaged in commercial activity that is subject to explicit statutory regulation in California (such as the sale of insurance to California residents or the issuance of shares in a California corporation) or in the alleged negligent manufacture of a product that caused physical injury to forum residents. *Kipperman v. McCone*, 422 F.Supp. 860, 874 (N.D.Cal. 1976).

### 5. Most Efficient Resolution

Fiji appears to be the most efficient forum to resolve this dispute. First, the contract interpretation is governed by Fiji law. Second, the dispute centers around BAIC's alleged failure to comply with Fiji law, its alleged failure to transfer good title from one Fiji corporation to another, and the Fiji Commissioner's subsequent actions in seizing the Fiji Branch. In addition, the key negotiations took place in Malaysia. Therefore, any witnesses to the negotiations could be transported much more conveniently to Fiji than to California. Although witnesses or records from BAIC's home office in Nassau would have to be transported a considerable distance to Fiji, the key evidence (including Fiji government officials) appears to be located in Fiji. *See Asahi Metal Indus. v. Superior Court*, —— U.S. ——, 107 S.Ct. 1026, 1033–35, 94 L.Ed.2d 92 (1987) (holding that, in suit by Taiwanese manufacturer for indemnification against Japanese manufacturer, the assertion by California court of personal jurisdiction over Japanese manufacturer was unreasonable).

### 6. Convenient and Effective Relief for Plaintiff

Since the FDIC is a national governmental agency, it would prefer litigating its

claim in the United States, although California is not more convenient than any other state. *See Cubbage v. Merchent,* 744 F.2d 665, 672 (9th Cir.1984), *cert. denied,* 470 U.S. 1005, 105 S.Ct. 1359, 84 L.Ed.2d 380 (1985) (noting that because plaintiff was a California resident, California courts would be more accessible to him). It is not clear, however, why the FDIC's recovery would be any less likely in a Fiji court of law. *See Rocke,* 660 F.2d at 400. In addition, litigating in foreign forums is not unprecedented for the FDIC. The transcript of the hearing on BAIC's motion to dismiss reveals that the FDIC is presently litigating a dispute with the Bank of New Zealand in Fiji.

### 7. *Availability of an Alternative Forum*

█ FDIC bears the burden of proving the unavailability of an alternative forum. *Pacific Atl. Trading Co.,* 758 F.2d at 1331. Although it has argued that California would be a more convenient forum, it has not met its burden of proving that it would be precluded from suing BAIC outside of California. *See Gates Learjet Corp.,* 743 F.2d at 1333–34.

### CONCLUSION

In light of the due process requirement that the defendant's expectations and burdens should be weighed more heavily than the plaintiff's hardships, *Rocke,* 660 F.2d at 400, FDIC has not met its burden of establishing the existence of personal jurisdiction over BAIC. We therefore affirm the district court's dismissal of the action for lack of personal jurisdiction.

AFFIRMED.