889 F.2d 1096
 Unpublished Disposition
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 
 TWC INTERNATIONAL, INC., Plaintiff-Appellee,
v.
Dewayne C. GREENE; L.G. Hawkins; Dewayne Greene &
Associates, Defendants-Appellants.
 No. 88-3755.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 28, 1989.
Decided Nov. 15, 1989.
 Before FARRIS, NOONAN and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 On or about February 15, 1985, representatives from TWC International, Inc., ("TWC"), a Montana corporation with its principal place of business in Montana, travelled to Oklahoma to contact representatives of Dewayne Greene and Associates ("Greene"), an association doing business in Oklahoma. Greene agreed to secure for TWC a letter of commitment for a loan. TWC transferred $16,000 to Greene, $12,000 to be held in trust until the letter of commitment was produced, the remainder to be used for expenses. No letter of commitment was produced, and the loan never materialized.
 
 
 3
 TWC filed this action after Greene failed to return the $16,000, minus verified expenses. Greene moved to dismiss based on lack of personal jurisdiction and improper venue. The motion was denied. After obtaining an entry of default by the clerk of the court, TWC applied for a default judgment, attaching an affidavit specifying the consequential damages incurred by TWC as a result of Greene's actions. At the default hearing, the district court heard additional evidence on damages. The district court subsequently granted a default judgment in favor of TWC. Greene appeals the district court's decisions. We affirm in part, reverse in part, and remand with directions to modify the damages award.
 
 STANDARD OF REVIEW
 
 4
 The facts surrounding the issue of jurisdiction are undisputed. Where the facts are undisputed, a district court's determination that personal jurisdiction can be exercised is a question of law, reviewable de novo. Pacific Atlantic Trading Co. v. M/V Main Express, 758 F.2d 1325, 1326 (9th Cir.1985). Venue determinations are reviewed de novo as questions of law. Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 841 (9th Cir.1986). Review of the factual findings supporting a default judgment is for clear error, and review of the court's decision to enter a default is for abuse of discretion. Alan Neuman Productions, Inc. v. Albright, 862 F.2d 1388, 1391 (9th Cir.1988).
 
 DISCUSSION
 I. Venue
 
 5
 Venue under 28 U.S.C. Sec. 1391(a) is proper only "where all plaintiffs reside or all defendants reside, or ... where the claim arose." 28 U.S.C. Sec. 1391(a) (1982).
 
 
 6
 In this case, there is only one plaintiff-appellee, TWC, a corporation. The complaint clearly alleges that TWC has its principal place of business and is incorporated in Montana. Venue in that state was therefore proper.
 
 II. Personal Jurisdiction
 
 7
 In diversity cases, a district court applies the forum state rules of personal jurisdiction provided the state rule comports with constitutional principles of due process. Brand v. Menlove Dodge, 796 F.2d 1070, 1072-73 (9th Cir.1986). Montana courts seem to exercise personal jurisdiction to the maximum extent allowed by the United States Constitution. See North Dakota v. Newberger, 188 Mont. 323, 613 P.2d 1002, 1004 (1980) (recognizing the prevailing trend towards expanding the scope of state jurisdiction to the fullest extent possible). It is the plaintiff's burden to show jurisdiction exists. Data Disc, Inc. v. Systems Technology Assocs., Inc., 557 F.2d 1280, 1285 (9th Cir.1977).
 
 1. Tort Claims
 
 8
 TWC's complaint alleges claims for fraud and conversion and other claims related to breach of contract. The claims for fraud and conversion were not properly before the district court. Assuming the truth of the allegations, the torts began and were completed by TWC's first visit to Oklahoma, when Greene convinced TWC to part with its $16,000. Nothing in the record suggests that Greene had contacted TWC in Montana by that time.[1] At most, Greene's only link with Montana was that he knew that the alleged fraud or conversion would affect a Montana resident's operation in Montana. That is, however, an insufficient basis on which to premise personal jurisdiction over Greene. See Brand, 769 F.2d 1070 (no general or specific jurisdiction over used car salesman, who knew defective car would be taken to California when sold, but otherwise did not have any contacts with California).
 
 2. Breach of Contract and Related Claims
 
 9
 Our analysis differs with respect to the alleged breach of contract and related claims, because events occurred after the first Oklahoma visit which make colorable the exercise of personal jurisdiction over Greene. Specifically, Greene contacted TWC in Montana, presumably to inform TWC of the details involved in securing the letter of commitment.
 
 
 10
 The issue before us is whether the district court correctly exercised specific jurisdiction over Greene. This court applies a three-factor test to determine the propriety of exercising specific jurisdiction. Under the test, the plaintiff must show that (1) the defendant acted such as to purposefully avail himself of the forum's laws; (2) the claim arose out of forum-related activities; and (3) the exercise of jurisdiction was reasonable. Data Disc, 557 F.2d at 1287. If the plaintiff shows that the defendant purposefully directed his activities at the forum, a presumption arises that jurisdiction is reasonable. Haisten v. Grass Valley Medical Reimbursement Fund, Ltd., 784 F.2d 1392, 1397 (9th Cir.1986). Jurisdiction may be proper even upon a lesser showing of forum contacts if the exercise of jurisdiction is reasonable. Id.
 
 A. Purposeful Availment
 
 11
 Greene's contacts with Montana amount to sending a telegram to Montana dated May 18, 1985, and telephoning Montana. Greene did not seek TWC's business in Montana, nor did he advertise there. Greene did not have offices or property in Montana. We cannot say that under these circumstances Greene purposefully availed himself of the benefit of that forum's laws.
 
 
 12
 However, it is beyond dispute that Greene knew he was dealing with a Montana corporation and that the proceeds of the loan would be used for mining investments in Montana. Greene's knowledge may support the exercise of jurisdiction, if Green engaged in forum-related activities and jurisdiction is shown to be reasonable. See Brand, 796 F.2d at 1075.
 
 B. Forum-Related Activities
 
 13
 Greene's forum-related activities in Montana were sufficient to support jurisdiction in Montana if the exercise of jurisdiction is shown to be reasonable. Concededly Greene did not physically enter Montana to do business with TWC, and the bulk of Greene's contacts with TWC were telephonic. However, it is not necessary that Greene's activities be physically performed in Montana to make the exercise of jurisdiction proper:
 
 
 14
 [j]urisdiction ... may not be avoided merely because the defendant did not physically enter the forum State.... [i]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire.... So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion than an absence of physical presence can defeat personal jurisdiction there.
 
 
 15
 Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985). Greene knew that it had contracted with a Montana corporation, and that the contract would affect Montana. Thus, the main issue remains whether exercise of jurisdiction under these circumstances was reasonable.
 
 C. Reasonableness
 
 16
 This court balances seven factors to determine whether the exercise of jurisdiction is reasonable: (1) the extent of purposeful interjection into the forum state; (2) the burden on the defendant; (3) the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in the suit; (5) the most efficient judicial resolution of the dispute; (6) convenience and effectiveness of relief for the plaintiff; and (7) the existence of an alternative forum. Federal Deposit Ins. Corp. v. British-American Ins. Co., Ltd., 828 F.2d 1439, 1442 (9th Cir.1987).
 
 
 17
 1. Purposeful Interjection. In contract cases, we consider the negotiations and contemplated future consequences of the contract to determine the extent of purposeful interjection. Id. at 1443. Here, the negotiations leading to the contract whereby TWC agreed to part with $16,000 occurred prior to the time that Greene had any contacts with Montana. However, the contemplated future consequences of the contract involved Montana in several ways. It was evident Greene would have to contact TWC in Montana to inform TWC about its progress in securing the letter of commitment and the details of securing the loan. If the loan materialized, its proceeds would be used in Montana. Finally, the contract then envisioned continuous contact between Greene and TWC, presumably in both Oklahoma and Montana, because it obligated TWC to pay Greene 10% of its annual profit. See Appt's brief, exh. 7.
 
 
 18
 We conclude that Greene's purposeful interjection into Montana, while not overwhelming, weighs in favor of exercising jurisdiction.
 
 
 19
 2. The burden on the defendant. Besides contending that he should not have to litigate in Montana, Greene does not make any showing that he would be burdened by having to litigate in Montana. In any event, "[i]mprovements in communication and transportation have reduced much of the historical burden of litigating in a distant forum." Decker Coal, 805 F.2d at 841. This factor is therefore not significant.
 
 
 20
 3. The conflict with the sovereignty of the defendant's state. This factor is only relevant when the defendant is from a foreign jurisdiction. Id.
 
 
 21
 4. The forum state's interest in the suit. Since the proceeds of the loan would have been used to operate mines in Montana, this factor is strongly in favor of adjudicating the case in Montana. Montana is interested in protecting mining operations within its borders.
 
 
 22
 5. The most efficient judicial resolution of the dispute. The site where the events in question took place or where most of the evidence is located usually will be the most efficient forum. Brand, 796 F.2d at 1075. Here, negotiations took place over the telephone, simultaneously involving both Montana and Oklahoma. Witnesses would also be located in both states. Evidence of damages would be found mostly in Montana. We conclude this factor is neutral or slightly favoring Montana.
 
 
 23
 6. Convenience and effectiveness of relief for the plaintiff. There is no allegation or reason to think that Montana is a more effective forum than would be Oklahoma. However, it is evident that it would be more convenient for TWC to litigate in Montana.
 
 
 24
 7. The existence of an alternative forum. There is no dispute that Oklahoma is a suitable alternative forum.
 
 
 25
 After considering the above factors separately and as a whole, we affirm the district court's decision that it was reasonable to exercise personal jurisdiction for purposes of the breach of contract and related claims. Greene's interjection into Montana is sufficient to weigh in favor of exercising jurisdiction. Additionally, Montana has a strong interest in protecting mining operations within its borders, and is the most convenient forum for the plaintiff. There is no showing the defendant is burdened by litigating in Montana.
 
 III. Default
 
 26
 TWC filed its complaint on June 6, 1986. On August 14, 1987, Greene had not yet filed an Answer, and TWC filed a notice of intention to enter a default. On September 8, 1987, the clerk of the court entered the default. TWC then applied for the court to enter the judgment of default, which application was served on the defendants on November 12, 1987. Greene did not move to set aside the clerk's entry of default. After a hearing on the issue on February 19, 1988, the court entered the default judgment.
 
 
 27
 Greene did not move at any time to set aside the default entered by the clerk or by the court. On appeal Greene claims that it was an abuse of discretion for the court to enter the default. However, the authority he offers is only for the proposition that in some cases it is an abuse of discretion for a court, upon motion, to refuse to set aside a default.
 
 
 28
 Whether we construe Greene's appeal as that from the entry of judgment itself or from a motion to set the judgment aside, we affirm the district court's decision.
 
 
 29
 The decision to enter a default judgment is discretionary. Albright, 862 F.2d at 1392. Although Greene had been served with notice of TWC's application for a default judgment, Greene's counsel did not move to set aside the clerk's default and did not offer any excuse for its delay in filing an Answer either by motion or orally, at the default judgment hearing.[2] Thus, no reason was presented to the court which might have moved the court to set aside the clerk's default and refuse to enter a default judgment. The court did not abuse its discretion by entering the default.
 
 
 30
 For similar reasons, if Greene's argument is construed as a motion to set aside the default, the argument fails. A default judgment is not disturbed if (1) the defendant's culpable conduct led to the default; (2) the defendant has no meritorious defense; or (3) the plaintiff would be prejudiced if the judgment is set aside. Id.
 
 
 31
 Greene seeks to convince this court that he has a meritorious defense, by providing this court with copies of a proposed Answer and by references to testimony of the default judgment hearing. However, "if a default judgment is entered as the result of a defendant's culpable conduct ... we need not consider whether a meritorious defense was shown, or whether the plaintiff would suffer prejudice." Id. (citing Meadows v. Dominican Republic, 817 F.2d 517, 521 (9th Cir.), cert. denied, 484 U.S. 976 (1987)).
 
 
 32
 Here, it is clear that Greene was aware that the Complaint had been filed, since Greene entered a motion to dismiss. Beyond that, the record does not reveal any excuse whatever for Greene's delay to answer the Complaint. We hold that Greene's behavior was culpable and that the judge did not abuse his discretion by entering the default judgment.
 
 
 33
 The default judgment was proper. It follows it was proper to refuse Greene's proposed Answer and Cross-Complaint as untimely.
 
 IV. Damages
 
 34
 We do not disturb a damages award unless it is clearly unsupported by the evidence. Chalmers v. City of Los Angeles, 762 F.2d 753, 760 (9th Cir.1985). Both in an affidavit accompanying TWC's application for the default judgment and at the default judgment hearing the district court heard evidence of the consequential damages incurred by TWC. We therefore affirm those damages related to TWC's initial disbursement of $16,000, including the consequential damages determined by the district court and the attorneys' fees. However, because the district court did not have jurisdiction to consider TWC's tort claims, we vacate the award of $10,000 in punitive damages and remand with instructions to reduce the damages award by that amount.
 
 
 35
 On appeal, each party shall pay its own costs.
 
 
 36
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The complaint does not allege that Greene had any contact with Montana prior to February 15, 1985, when TWC first visited Greene in Oklahoma and the present deal was struck. The most that can be said is that TWC contacted Greene in Oklahoma. See Reporter's Transcript 2/19/88 at 8. On this record, however, Greene made no effort to contact TWC in Montana prior to February 15, 1985
 
 
 [2]
 Counsel at the hearing mentioned that another attorney had been handling the matter, and that he had been given last minute notice to make an appearance at the hearing. Transcript, at 38. But no excuse was given for the delay in filing the Answer