No. 14958

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

ROBERT MAY, Deputy Administrator,
Western Conference of Teamsters Pension
Trust Fund,

        Plaintiff, Respondent and Cross-Appellant,

   vs.

WILLIE FIGGINS, individually
and d/b/a FIGGINS & SONS,

        Defendants, Appellants and Cross-Respondents.

---

Appeal from:  District Court of the Eighteenth Judicial District,
             County of Gallatin,
             Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

   For Appellant:

      Berg, Morgan, Coil & Stokes, Bozeman, Montana
      Michael C. Morgan argued, Bozeman, Montana

   For Respondents:

      Bolinger, Higgins and Andes, Bozeman, Montana
      Gerry M. Higgins argued, Bozeman, Montana

---

                Submitted:  February 25, 1980
                  Decided:  MAR 18 1980

Filed:  MAR 18 1980

Thomas J. Kearney
                         Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Plaintiff sued a state District Court in Montana to enforce a Colorado default judgment against defendant. Defendant moved for summary judgment based on Colorado's lack of personal jurisdiction over the defendant in the Colorado action. Summary judgment was denied. After trial, the Court, sitting without a jury, found for plaintiff. Defendant appeals from that judgment.

The material facts are undisputed. Defendant Willie Figgins is a Montana road contractor who does most of his work in the Gallatin Valley. Including family members, Figgins has only seven employees at any one time. He does no road contracting in Colorado, does not advertise or solicit business in Colorado, and does not have a Colorado bank account.

On December 17, 1971, Willie Figgins signed a "Collective Bargaining Compliance Agreement" which was also signed by representatives of the Montana Joint Council of Teamsters No. 23, which has no connection with the State of Colorado. The compliance agreement was accepted by the Montana A.G.C. Teamsters Trust Fund and by the trustees of the Western Conference of Teamsters Pension Trust Fund at Seattle, Washington.

Under this agreement, Figgins agreed to be bound by the articles of trust contained in the pension trust fund. He agreed "to be bound by, become a party thereto, comply with and execute all forms necessary to be bound to the various Articles of Trust contained in the health and welfare plan and pension plan or any other trust established under the terms and conditions of said extent agreement." The Western

Conference of Teamsters Pension Trust Fund is one of the trusts so established. The administrative office of the Western Conference of Teamsters Pension Trust Fund is in Seattle, Washington, the situs of the trust is the State of Washington, and the articles of the trust state that ". . . all questions pertaining to its validity, construction, and administration shall be determined in accordance with the laws of that State." The trust provides that "Employer Contributions shall be paid to the depository bank designated by the Administrator of the Trust Fund for the particular Pension Agreement," and that "The County in which the particular Employer Contribution is payable shall be a proper county in which to institute legal proceedings to collect delinquent Employer Contributions."

Neither the collective bargaining compliance agreement nor the trust agreement specify where the contributions are to be made. In the compliance agreement, however, defendant also agreed to execute all necessary forms, one of which is the employer's monthly report which designates the United Bank of Denver in Denver, Colorado as the depository bank. Willie Figgins' bookkeeper sent thirty-five (35) checks, approximately one per month, to Colorado following the Trust Administrator's instructions, beginning on March 10, 1972. The checks were defendant's only contact with the State of Colorado.

Figgins was later audited by a Seattle, Washington firm for the trust. Plaintiff-respondent, Robert May, Deputy Administrator of the trust, brought an action in Colorado to collect delinquent employer contributions from Figgins. A summons was served on Figgins in Montana, but he did not defend the Colorado lawsuit, and plaintiff took a default

judgment in Colorado. Plaintiff brought suit in the Montana District Court to enforce the Colorado judgment. Figgins moved for summary judgment on the basis of Colorado's lack of personal jurisdiction over him in the Colorado suit, but the Montana District Court denied summary judgment and found for plaintiff. Defendant appeals from that judgment.

The following issues have been presented to this Court for review:

1. Did the defendant's act of sending thirty-five checks to the plaintiff's trust account in a Colorado bank establish sufficient "minimum contacts" to give the Colorado court in personam jurisdiction over the nonresident Montana defendant?

2. Did the Montana defendant knowingly consent to Colorado jurisdiction?

On cross-appeal plaintiff presents the following issue:

Did the trial court abuse its discretion by limiting plaintiff's attorney's fees to $1200?

> "As a result of the decisions of the Supreme Court expanding the limits of due process to permit the assertion of jurisdiction over non-residents where there has been only minimal contacts with the forum state, states have re-sponded by enacting long-arm statutes and court rules enlarging the scope of permissible juris-diction in the state courts." 2 Moore's Federal Practice ¶4.41-1[3] at 4-437.

> "Under these state long-arm statutes, the deter-mination of whether the court has in personam jurisdiction is a two-step process. The court first must look to the state statute to deter-mine whether the statute provides for the exer-cise of jurisdiction under the particular facts of the case, and second, the court must deter-mine whether it would offend due process to assert jurisdiction." 2 Moore's Federal Prac-tice ¶4.41-1[1] at 4-421.

The Montana Supreme Court has followed the two-step approach in Haker v. Southwestern Ry. Co. (1978), ___ Mont.

-4-

___, 578 P.2d 724, 729, 35 St.Rep. 523, and it is the proper frame of analysis in which to consider this case.

A Colorado statute grants jurisdiction over nonresidents if the cause of action arises from ". . .the transaction of any business within this state." Colo. Rev. Stat. § 13-1-124. The Colorado Supreme Court has interpreted the statute to mean that Colorado has in personam jurisdiction over any nonresident who meets the "minimum contacts" test of International Shoe Co. v. State of Washington (1945), 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95.

> "By enacting the latter statutes, our legislature intended to extend the jurisdiction of our courts to the fullest extent permitted by the due process clause of the fourteenth amendment of the United States Constitution."
> Safari Outfitters, Inc. v. Superior Court (1968), 167 Colo. 456, 448 P.2d 783, 784.

Accordingly, the only question to be decided is whether or not the Montana defendant's right to due process was violated by Colorado's assertion of jurisdiction in this case.

The leading case addressing the question of when a state may exercise jurisdiction over the person of a nonresident defendant is International Shoe Co. v. State of Washington, supra. The State of Washington brought suit to recover unpaid contributions to the state unemployment compensation fund from a foreign corporation which had no office in Washington and made no contracts there, but which employed salesmen within the state to solicit orders. The defendant corporation maintained that the activities of its salesmen did not render it "present" within the state for purposes of personal jurisdiction consistent with due process. In rejecting these contentions, the Supreme Court announced:

-5-

". . .due process requires only that in order
to subject a defendant to a judgment in per-
sonam, if he be not present within the territory
of the forum, he have certain minimum contacts
with it such that the maintenance of the suit
does not offend 'traditional notions of fair
play and substantial justice.'" International
Shoe, 326 U.S. at 316.

The Supreme Court elaborated on the requirements of the

"minimum contacts" test:

"Whether due process is satisfied must depend
rather upon the quality and nature of the ac-
tivity in relation to the fair and orderly
administration of the laws which it was the
purpose of the due process clause to insure.
That clause does not contemplate that a state
may make binding a judgment in personam against
an individual or corporate defendant with which
the state has no contacts, ties, or relations
. . .

"But to the extent that a corporation exercises
the privilege of conducting activities within
a state, it enjoys the benefits and protection
of the laws of that state.  The exercise of
that privilege may give rise to obligations;
and, so far as those obligations arise out of
or are connected with the activities within
the state, a procedure which requires the cor-
poration to respond to a suit brought to enforce
them can, in most instances, hardly be said to
be undue."  International Shoe, 326 U.S. at
319.  (Citations omitted.)

Applying these standards to the facts in International Shoe,

the Supreme Court held:

"It is evident that these operations establish
sufficient contacts or ties with the state of
the forum to make it reasonable and just ac-
cording to our traditional conception of fair
play and substantial justice to permit the
state to enforce the obligations which appel-
lant has incurred there."  326 U.S. at 320.

McGee v. International Life Ins. Co. (1957), 355 U.S.

220, 78 S.Ct. 199, 2 L.Ed.2d 223, represents the farthest

extension thus far of jurisdiction over a nonresident under

the International Shoe doctrine.  2 Moore's Federal Practice

¶4.25[4] at 4-253 and ¶4.41-1[1] at 4-413.  In McGee the

beneficiary under a life insurance policy brought suit in

-6-

California against a nonresident insurance corporation. The foreign corporation was served by registered mail pursuant to California statutes. The policy upon which the suit was based had been purchased by the decedent from an Arizona company which was subsequently, absored by defendant, a Texas corporation. Defendant's only connection with California was that it had mailed a reinsurance certificate to the decedent in California offering to insure him under the terms of the original policy and later delivered the insurance contract there. Also, the insured had sent his premiums by mail to defendant in Texas. The plaintiff obtained a default judgment in a California state court against the nonresident insurance company and brought an action to enforce the judgment in Texas, where the Texas courts refused to give full faith and credit to the California decree on the grounds that the California court had not secured jurisdiction over defendant consistent with due process. The Supreme Court reversed holding that the California judgment did not violate due process under the rationale of International Shoe. The Court said:

> "It is sufficient for purposes of due process
> that the suit was based on a contract which had
> substantial connection with that State . . .
> The contract was delivered in California, the
> premiums were mailed from there and the insured
> was a resident of that state when he died. It
> cannot be denied that California has a manifest
> interest in providing effective means of redress
> for its residents when their insurers refuse to
> pay claims. These residents would be at a severe
> disadvantage if they were forced to follow the
> insurance company to a distant State in order to
> hold it legally accountable. When claims were
> small or moderate individual claimants frequently
> could not afford the cost of bringing an action
> in a foreign forum--thus in effect making the
> company judgment proof. Often the crucial wit-
> nesses--as here on the company's defense of sui-
> cide--will be found in the insured's locality."
> McGee, 355 U.S. at 223.

Thus, in personam jurisdiction was upheld in McGee where the only contact the nonresident had with the forum state was the insurance contract sued upon, and where no evidence was presented that any agent or representative of the defendant was ever in the State of California. "However, where defendant's contacts with the state are not sufficient to satisfy traditional notions of fair play and substantial justice, in personam jurisdiction may not be secured over him through long-arm service." 2 Moore's Federal Practice ¶4.41-1[1] at 4-414, citing Hanson v. Denckla (1958), 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283. Hanson, decided a year after McGee, represents a limitation to the Supreme Court's earlier holdings in International Shoe and McGee.

In Hanson, the United States Supreme Court denied a Florida court's assertion of jurisdiction over a Delaware trust and stated: ". . .it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." 357 U.S. at 253. In Hanson a resident of Pennsylvania created a trust, naming a Delaware trust company as trustee. The settlor retained a life estate and reserved a power of appointment over the remainder. She subsequently became a resident of Florida, where she executed an inter vivos power of appointment over a portion of the remainder and made out a will appointing the balance of the trust corpus to her executrix. When the settlor died in Florida, the question arose as to whether the assets appointed inter vivos should have passed under decedent's will, since the inter vivos appointment would have been invalid under Florida

-8-

law as an attempted testamentary disposition. A declaratory judgment action was brought in Florida to resolve this issue.

The Delaware trust company was given notice as required by the Florida statutes dealing with constructive service. The Supreme Court reversed the Florida court's adjudication of the matter, holding that under Florida law the Delaware trust company was an indispensable party over which the Florida courts had not obtained in personam jurisdiction. The Supreme Court concluded there were insufficient contacts linking the trust company to the forum state. The majority opinion in Hanson stated:

> "In McGee the Court noted the trend of expanding personal jurisdiction over nonresidents . . . But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. . . Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him. . .

> "We fail to find such contacts in the circumstances of this case. The defendant trust company has no office in Florida, and transacts no business there. None of the trust assets has ever been held or administered in Florida, and the record discloses no solicitation of business in that State either in person or by mail. . .

> "The cause of action in this case is not one that arises out of an act done or transaction consummated in the forum State. In that respect, it differs from McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, and the cases there cited . . .

> "In contrast, this action involves the validity of an agreement that was entered without any connection with the forum State. The agreement was executed in Delaware by a trust company incorporated in that State and a settlor domiciled in Pennsylvania. The first relationship Florida had to the agreement was years later when the

settlor became domiciled there, and the trustee
remitted the trust income to her in that State.
From Florida Mrs. Donner carried on several bits
of trust administration that may be compared to
the mailing of premiums in McGee.  But the record
discloses no instance in which the trustee per-
formed any acts in Florida that bear the same re-
lationship to the agreement as the solicitation in
McGee.  Consequently, this suit cannot be said to
be one to enforce an obligation that arose from a
privilege the defendant exercised in Florida. . .

"The execution in Florida of the powers of appoint-
ment under which the beneficiaries and appointees
claim does not give Florida a substantial connection
with the contract on which this suit is based . . .
The unilateral activity of those who claim some
relationship with a nonresident defendant cannot
satisfy the requirement of contact with the forum
State.  The application of that rule will vary
with the quality and nature of the defendant's
activity, but it is essential in each case that
there be some act by which the defendant pur-
posefully avails itself of the privilege of con-
ducting activities within the forum State, thus
invoking the benefits and protections of its laws.
International Shoe Co. v. State of Washington,
326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed.
95."  357 U.S. at 250-253.

Defendant advocates that Hanson is dispositive of this

appeal, apparently on the grounds that all of his initial

contacts concerning the Western Conference of Teamsters

Pension Trust Fund were not with Colorado, but were either

with Montana or with the State of Washington, the situs of

the trust.  It is true that all of the initial contacts con-

cerning the trust established in Hanson were either in Penn-

sylvania, where the settlor resided at the time the trust

was created, or in Delaware, the situs of the trust, rather

than in Florida, where the settlor resided at the time she

exercised her power of appointment and at the time of her

death.  That fact, however, was not dispositive in Hanson,

where the United States Supreme Court held that the Florida

court had no personal jurisdiction over the trustee and no

jurisdiction over the trust based on a finding that there

were no "minimum contacts" between the Delaware trustee and

-10-

the forum state of Florida, either initially or at any subsequent time.

Nevertheless, _Hanson_ has a bearing on the outcome of this appeal.  In both cases, the nonresident defendant (Willie Figgins in this case, the Delaware trustee in _Hanson_) has no office in the forum state (Colorado in this case, Florida in _Hanson_), has no assets there, transacts no business there, and has not solicited business in the forum state.  It is true that the cause of action in the present appeal arises out of Willie Figgins' failure to make employer contributions to the Colorado bank, while in _Hanson_ the Court stated that the cause of action was not one that arose out of an act done or a transaction consummated in the forum state, since the Delaware trust was not established in Florida and had no connection with Florida, despite the unilateral activity of the settlor in Florida and the trustee's remittance of trust income to her in that state. "The contacts required upon which to base jurisdiction, consistent with due process, would be greater where the action is brought upon a claim not arising from these contacts with the state, than where the action does arise from the state contacts."  2 Moore's Federal Practice ¶4.41-1[1] at 4-414.  See _International Shoe_, supra, and Perkins v. Benguet Consolidated Mining Co. (1952), 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485.  Still, defendant's act of sending checks to Colorado can be compared with the activity of the _Hanson_ trustee in remitting trust income to the settlor in Florida, and it must be remembered that in _Hanson_ the Court held that there was no act by which the defendant trustee "purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."  357 U.S. at 253.

Applying the rules enunciated in International Shoe, McGee and Hanson to the present case, it does not appear that defendant Willie Figgins had sufficient "minimum contacts" to subject him to the jurisdiction of the Colorado court. It would be unfair to this defendant and unreasonable to require him to defend in Colorado where his only contact with that forum was to mail thirty-five checks to a Denver Bank. Willie Figgins has no offices in Colorado, does no contracting work in Colorado, solicits no business there, and does not have a Colorado bank account. By his act of merely sending checks to plaintiff's bank in Colorado, he has not purposefully availed himself of the privilege of conducting business within that forum, and he has not thereby invoked the benefits and protections of its laws. Consequently, there is no rationale to justify subjecting him to Colorado's jurisdiction.

In support of this conclusion are holdings from the courts of other states which state that merely making payments in a state does not establish the requisite minimum contacts to satisfy due process. U-Anchor Advertising, Inc. v. Burt (Tex. 1977), 553 S.W.2d 760, 763, cert. denied 434 U.S. 1063; Freedom Finance Co. v. Berry (N.J.Super. 1972), 62 N.J. 256, 290 A.2d 298, aff'd/300 A.2d 341; "Automatic" Sprinkler Corp. v. Seneca Foods Corp. (1972), 361 Mass. 441, 280 N.E.2d 423. Compare Tucker v. Vista Financial Corp. (1977), ____ Colo. ____, 560 P.2d 453, holding that California could properly exercise jurisdiction over a resident of Colorado whose sole contact with California was that in Colorado she co-signed a promissory note payable in California to a California bank and authorized funds to be disbursed in California.

-12-

The Montana contractor did not knowingly consent to Colorado in personam jurisdiction. In the collective bargaining compliance agreement which he signed with the Western Conference of Teamsters, located in Seattle, Washington, defendant agreed to be bound by the articles of trust contained in the pension trust fund. One provision of the articles of trust stated that the county in which the employer contribution is payable as designated by the Administrator of the trust fund "shall be a proper county in which to institute legal proceedings to collect delinquent Employer Contributions." Neither the collective bargaining compliance agreement nor the articles of trust specified where the employer contributions were to be paid. They were paid to the Colorado bank by defendant upon receipt of subsequent instructions from the Trust Administrator. In the collective bargaining compliance agreement, however, defendant also agreed to execute all necessary forms, one of which is the employer's monthly report which designates the depository bank.

The general rule is that "parties to a contract may agree in advance to submit to the jurisdiction of a given court . . ." National Equipment Rental v. Szukhent (1964), 375 U.S. 311, 316, 84 S.Ct. 411, 11 L.Ed.2d 354. In this case, however, the courts of Colorado could not exercise in personam jurisdiction over the defendant consistent with due process, so that any purported consent to Colorado's jurisdiction would amount to a waiver of the constitutional right to due process and would have to be evaluated in that light and by the tests applicable to a waiver of constitutional rights. The defendant contractor in this case could not have known that the agreement which he signed would subject

-13-

him to the jurisdiction of Colorado courts because there was nothing in the collective bargaining compliance agreement or in the articles of trust that specified the jurisdiction as to which he waived his constitutional due process rights. Hence, there was no clear waiver of his due process rights as required by Fuentes v. Shevin (1972), 407 U.S. 67, 95, 92 S.Ct. 1983, 32 L.Ed.2d 556. Compare Clinic Masters v. District Court (1976), ___ Colo. ___, 556 P.2d 473. As stated in Telephonic, Inc. v. Rosenblum (1975), 88 N.M. 532, 543 P.2d 825, 830: "An agreement to waive this constitutional right must be deliberately and understandingly made, and language relied upon to constitute such a waiver must clearly, unequivocally and unambiguously express a waiver of this right."

To accept the respondent's argument that the defendant here contractually consented to be sued in Colorado would be to give the respondent carte blanche to use contracts of adhesion to establish a right to sue defendants wherever would be most convenient to respondents, and least convenient to defendants. The contractual provisions purporting to waive in personam jurisdiction are unreasonable and unenforceable.

Furthermore, defendant did not waive his rights as to Colorado jurisdiction. The Compliance Agreement, which Willie Figgins signed, and Trust Agreement, to which he was bound, do not state specifically the county and state where legal proceedings are to be instituted. By subsequently receiving a notice to send payments to Colorado and by accommodating the Trust Administrator by mailing payments to Colorado, defendant did not deliberately, understandingly, clearly, unequivocally, and unambiguously consent to the jurisdiction of the State of Colorado.

The judgment of the District Court is reversed and the cause is dismissed. The matter is remanded to the District Court so that proceedings may be had to determine costs and reasonable attorney fees for the services of defendant's attorneys and assessment of the same against plaintiff.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices