JUSTICE NELSON
specially concurs.
¶48 I concur in our Opinion. However, as mentioned briefly at ¶¶ 21, 27 and 36 of our Opinion and at ¶ 47 of Justice Leaphart’s concurrence, there is an additional rationale supporting our decision in this case-i.e., whether Kloss effectively waived her rights to a trial by jury and to access to the courts[1] by executing Jones’s 1992 and 1998 *138 standard-form contracts. As far as I can determine, this is an issue of first impression in Montana.[2] It is my intention to develop this rationale further.
¶49 Certainly, any person has the right to enter into an agreement which includes an arbitration clause. Where the contract and the arbitration clause has been negotiated at arm’s-length between parties of equivalent sophistication and bargaining power, then there is no reason why such parties cannot also agree to settle disputes arising under the agreement, outside the judicial process. If these sorts of parties determine that it serves their mutual interests to waive their Montana constitutional rights of jury trial and access to the courts, then they have the right to do so.
¶50 The contrary is also true. Where parties are not of equivalent sophistication and bargaining power and where the agreement and the arbitration clause have not been negotiated for at arm’s-length, then it is appropriate-indeed, imperative-that courts closely scrutinize any process and any contract which results in one party forfeiting basic constitutional guarantees to the advantage of the other party. That brings me to the case at bar.
¶51 As stated in our Opinion, the parties here were not of equivalent sophistication and bargaining power. The defendant, Jones, is one of this country’s large financial corporations; Kloss is an elderly widow. Jones is in the business of selling securities and investment advice and services nation-wide; Kloss is an ordinary citizen with no apparent special expertise in the stock market. Kloss did not negotiate at arm’s-length for the contracts at issue. Rather, she was presented with typical, standard-form, take-it-or-leave-it contracts of adhesion that, among other boiler-plate provisions, included arbitration clauses. Kloss did not read the agreements but relied upon Jones’s agent, Husted, to explain the significant terms of the agreements to her, as he had in *139 past dealings. Furthermore, as Justice Leaphart points out (and setting aside the question of whether Kloss would have understood the significance of what she was agreeing to) even if she had desired to read the contracts before signing, Jones’s execution procedures insured that she would not have that opportunity.
¶52 With that background, I next turn to Article II of Montana’s Constitution. The rights included within this “Declaration of Rights” are “fundamental rights.”)Butte Community Union v. Lewis (1986), 219 Mont. 426, 430, 712 P.2d 1309, 1311. Accord, Wadsworth v. State (1996), 275 Mont. 287, 299, 911 P.2d 1165, 1172; State v. Tapson, 2001 MT 292, ¶ 15, 307 Mont. 428, ¶ 15, 41 P.3d 305, ¶ 15. That means that these rights are significant components of liberty, see Black’s Law Dictionary, 7th Edition, p. 683, any infringement of which will trigger the highest level of scrutiny, and, thus, the highest level of protection by the courts. Wadsworth, 275 Mont. at 302, 911 P.2d at 1174 (citing Gulbrandson v. Carey (1995), 272 Mont. 494, 502, 901 P.2d 573, 579 (“The most stringent standard, strict scrutiny, is imposed when the action complained of interferes with the exercise of a fundamental right...”)). Two specific fundamental rights are implicated here. The first involves the right to trial by jury.
¶53 Article II, Section 26 of Montana’s Constitution guarantees that “[t]he right of trial by jury is secured to all and shall remain inviolate.” That this constitutionally guaranteed right of a jury trial is “fundamental” and, therefore, deserving of the highest level of court scrutiny and protection is beyond argument. See, e.g., State v. LaMere, 2000 MT 45, 298 Mont. 358, 2 P.3d 204 (requiring procedural exactitude for impaneling jury); Woirhaye v. Montana Fourth Judicial Dist. Court, 1998 MT 320, 292 Mont. 185, 972 P.2d 800 (striking statute that limited right to sequential jury trials as unconstitutional); State v. Dahlin, 1998 MT 113, 289 Mont. 182, 961 P.2d 1247 (requiring waiver of right to jury trial be evinced by written consent of both parties filed with the court in criminal proceedings); Hammer v. Justice Court of Lewis and Clark County (1986), 222 Mont. 35, 720 P.2d 281 (abolishing prepayment of fees for civil jury trial as obstructive).
¶54 As we observed in LaMere, the importance of the right of trial by jury derives from it having “developed in harmony with our basic concepts of a democratic society and a representative government.” LaMere, ¶ 28 (citation omitted). “Since the time of the Magna Carta, ‘trial by jury has been prized as a shield against oppression... [and] the approaches of arbitrary power.’ ’’LaMere, ¶ 28 (citation omitted). This *140 entitlement has been "long thought to be a safeguard against tyranny.” LaMere, ¶ 28. The right to trial by jury is a “jealously protected safeguard against government oppression.” LaMere, ¶ 29. And, “[t]he guarantees of jury trial in the Federal and State Constitutions reflect a profound judgment about the way in which the law should be enforced and justice administered.” LaMere, ¶ 29 (citation omitted). Or, as Justice William Blackstone stated over two centuries ago,
[This right] is a privilege of the highest and most beneficial nature and our most important guardian both of public and private liberty. Our liberties cannot but subsist so long as this palladium remains sacred and inviolate, not only from all open attacks, but also from all secret machinations which may sap and undermine it.
Commentaries on the Laws of England (1765), reprinted in Volume 2 of In Defense of Trial by Jury at ii (J. Kendall Few, American Jury Trial Foundation, 1993).
¶55 Given the sacredness and inviolability of the fundamental right to trial by jury, any contract provision that openly or subtly causes the forfeiture of the exercise of this right must be rigorously examined by the courts. This is all the more necessary when such a contract provision is included in a standard-form contract of adhesion foisted upon unsophisticated and unsuspecting ordinary citizens and small business people as part of the intercourse of daily life. Indeed, the use of such contractual provisions is at one and the same time an “open attack” on the right of jury trial and a “secret machination” causing forfeiture of that right that Blackstone predicted would “sap and undermine” the right, and with that our “public and private liberties].”
¶56 The second fundamental right at issue in the case at bar is the right of access to the courts.
¶57 Article II, Section 16 of Montana’s Constitution guarantees that “[cjourts of justice shall be open to every person, and speedy remedy afforded for every injury of person, property, or character.” In my view, this right is as much a fundamental right as is any other Article II right. This is so not only because the right of access to the courts is included within the Constitution’s Declaration of Rights, but also, and just as importantly, without the right of access to the courts, other Article II rights would have little protection from infringement and, thus, little meaning. See, Butte Community Union, 219 Mont. at 430, 712 P.2d at 1311-13; Wadsworth, 275 Mont. at 299, 911 P.2d at 1172.
¶58 Constitutional rights that cannot be enforced are illusory. It is as *141 if those rights cease to exist as legal rights. Montanans’ fundamental rights to a jury trial, to due process and to equal protection, among others, are rendered meaningless absent the courts being able to enforce these rights. Purely and simply, access to the courts guarantees that other Article II rights are something more than mere dreams and aspirations. Access to the courts gives real existence to other fundamental rights. And, that makes access to the courts a fundamental right also, for without this right other rights have no meaning.
¶59 In this conclusion, I acknowledge that we have explicitly and implicitly held to the contrary. See, Meech v. Hillhaven West Inc. (1989), 238 Mont 21, 776 P.2d 488; Peterson v. Great Falls School District (1989), 237 Mont. 376, 773 P.2d 316; Miller v. Fallon County (1989), 240 Mont. 241, 783 P.2d 419; Bieber v. Broadwater County (1988), 232 Mont. 487, 759 P.2d 145; Linder v. Smith (1981), 193 Mont. 20, 629 P.2d 1187; Merchants Ass’n v. Conger (1979), 185 Mont. 552, 606 P.2d 125. Notwithstanding, I do not see how these decisions can be squared with, much less continue to exist beside, this Court’s jurisprudence holding that other Article II rights are fundamental rights.
¶60 This Court has stated repeatedly that a right is fundamental under Montana’s Constitution if the right is either found in the Declaration of Rights or is a right without which other constitutionally guaranteed rights would have little meaning. State v. Bird, 2001 MT 2, ¶ 25, 308 Mont. 75, ¶ 25, 43 P.3d 266, ¶ 25 (right to be present for all court proceedings); In re Mental Health of K.G.F., 2001 MT 140, ¶ 30, 306 Mont. 1, ¶ 30, 29 P.3d 485, ¶ 30 (right to effective assistance of counsel for involuntary commitment proceedings); Armstrong v. State, 1999 MT 261, ¶ 34, 296 Mont. 361, ¶ 34, 989 P.2d 364, ¶ 34 (right to privacy); and MEIC v. Dept. of Environmental Quality, 1999 MT 248, ¶ 56, 296 Mont. 207, ¶ 56, 988 P.2d 1236, ¶ 56 (right to a clean and healthful environment); State v. Clark, 1998 MT 221, ¶ 22, 290 Mont. 479, ¶ 22, 964 P.2d 766, ¶ 22 (right to confront and examine accusers); State v. Weaver, 1998 MT 167, ¶ 26, 290 Mont. 58, ¶ 26, 964 P.2d 713, ¶ 26 (right to a unanimous verdict); Wadsworth, 275 Mont. at 299, 911 P.2d at 1172 (right to pursue employment); Matter of C.H. (1984), 210 Mont. 184, 201, 683 P.2d 931, 940 (right to physical liberty). We could never have enforced the fundamental rights litigated in these and in other cases where fundamental rights were at issue had access to the courts been denied in the first instance. Indeed, without access to the courts, these other fundamental rights would have had no real *142 existence; they would have been merely aspirations without substance.
¶61 The instant case and others we have considered-Chor, 261 Mont. 143, 862 P.2d 26; Casarotto, 268 Mont. 369, 886 P.2d 931; Keystone, Inc. v. Triad Systems Corporation, 1998 MT 326, 292 Mont 229, 971 P.2d 1240; and Iwen, 1999 MT 63, 293 Mont. 512, 977 P.2d 989-likewise demonstrate why the right of access to the courts must be protected as the fundamental constitutional right it is. These cases point inescapably to the conclusion that, for their own obvious economic benefit, large national and multi-national corporations are effectively privatizing an important segment of the civil justice system in this country by including fine-print, non-negotiable, take-it-or-leave-it, mandatory, binding arbitration clauses in their standard-form contracts.[3]
¶62 These are the adhesion contracts that ordinary citizens and small business people must accept if they want to acquire what most would consider to be basic and necessary services and products-household appliances, residential leases, rental cars, pest extermination, banking services, office and business equipment, phone service, consumer product warranties, household and commercial insurance, employment, credit cards, consumer and small business financing and *143 medical attention, for example. Likewise, these are the adhesion contracts that, as in the case sub judice, ordinary citizens and small business people are compelled to sign if they want to participate in the national/global economy, the profits of which fuel the very existence and growth of these same national and multi-national corporations (and the election and re-election of their benefactors in government). Bankruptcy Judge James S. Sledge, Jr. recently brought this point home. He observed:
Ask any reasonable man on the street, i.e.[,] a consumer, if he thinks it is fair that he is barred from access to the courts when he has a claim based on a form contract which contains an arbitration clause and he will respond with a resounding “No!” ... The reality that the average consumer frequently loses his/her constitutional rights and right of access to the court when he/she buys a car, a household appliance, insurance policy, receives medical attention or gets a job rises as a putrid odor which is overwhelming the body politic.
In re Knepp, 229 B.R. 821, 827 (Bankr. N.D. Ala. 1999).
¶63 In short, without access to the courts, there is no way to safeguard the other fundamental rights guaranteed by Article II of Montana’s Constitution. Indeed, to the extent that those rights cannot be protected by the courts, Montana’s Declaration of Rights is little more than a collection of eloquent, but unenforceable, words. Access to the courts is a fundamental right, and our cases that hold to the contrary are wrong.
¶64 That said, my objective here is not to provide an analysis for challenging the reasoning of Meech, Linder and their progeny. Rather, my point is that where fundamental constitutional rights are involved-here, the right of a trial by jury and, in my opinion, access to the courts-the law is eminently clear that the waiver of such rights will not be lightly presumed. State v. Okland (1997), 283 Mont. 10, 15, 941 P.2d 431, 434 (presuming waiver of counsel from a silent record is impermissible); State v. Lucero (1968), 151 Mont. 531, 538, 445 P.2d 731,735 (stating courts indulge every reasonable presumption against waiver of constitutional rights). A waiver of a fundamental right must be proved to have been made voluntarily, knowingly and intelligently-typically by the party seeking the waiver. Bird, ¶¶ 35-36; Tapson, ¶ 25; Lucero, 151 Mont. at 538, 445 P.2d at 735. For a fundamental right to be effectively waived, the individual must be informed of the consequences before personally consenting to the waiver. Dahlin, ¶ 22; State v. Allison (1944), 116 Mont 352, 360, 153 *144 P.2d 141, 145. And, the waiver will be narrowly construed. State v. Tiedemann (1978), 178 Mont. 394, 402, 584 P.2d, 1284, 1298.
¶65 In applying these well-settled principles of law in the context of the issue presented here, a reviewing court must consider a totality of overlapping and non-exclusive factors including: whether there were any actual negotiations over the waiver provision; whether the clause was included on a take-it-or-leave-it basis as part of a standard-form contract; whether the waiver clause was conspicuous and explained the consequences of the provision (e.g. waiver of the right to trial by jury and right of access to the courts); whether there was disparity in the bargaining power of the contracting parties; whether there was a difference in business experience and sophistication of the parties; whether the party charged with the waiver was represented by counsel at the time the agreement was executed; whether economic, social or practical duress compelled a party to execute the contract (e.g. where a consumer needs phone service and the only company or companies providing that service require execution of an adhesion contract with a binding arbitration clause before service will be extended); whether the agreement was actually signed or the waiver provision separately initialed; whether the waiver clause was ambiguous or misleading; and whether the party with the superior bargaining power lulled the inferior party into a belief that the waiver would not be enforced.
¶66 Returning to the record before us, there is no evidence to support a conclusion that Kloss knowingly and intelligently waived her rights to trial by jury and access to the courts when she executed Jones’s standard-form contracts containing the arbitration clauses. There is no evidence that Kloss negotiated for any provision in the contracts much less the arbitration clauses. There is no indication in the record that Kloss had counsel when she signed the agreements. And, it can hardly be argued that Kloss was on the same level of sophistication and expertise as that of Jones’s agent, Husted; nor did she have any degree of equal bargaining power.
¶67 What the record does demonstrate, however, is that Kloss is an ordinary citizen of advanced years; that she did not read the agreements; that she was not given the opportunity to read the agreements (which, however, did contain an explanation of the consequences of the arbitration clause); and that Jones’s agent, upon whom Kloss had historically relied to explain the significant parts of agreements presented to her, neither pointed out the existence of the arbitration clauses nor explained that the clauses would bar her from exercising her fundamental constitutional rights of access to Montana’s *145 courts and to a trial by jury. The record is clear. Kloss did not voluntarily, knowingly and intelligently waive her fundamental constitutional rights of trial by jury and access to the courts on the facts presented here.
¶68 It is to the consequences of this ineffective waiver that I next turn.
¶69 The United States Supreme Court has held that the Federal Arbitration Act (FAA) preempts those state laws which invalidate and are “applicable only to arbitration provisions.” Allied-Bruce Terminix Companies v. Dobson (1995), 513 U.S. 265, 281, 115 S.Ct. 834, 843, 130 L.Ed.2d 753. The Court has stated that in adopting Section 2 of the FAA Congress precluded states from singling out arbitration provisions for suspect status. Rather, according to the Court, such provisions must be placed “upon the same footing as other contracts.” Scherk v. Alberto-Culver Co. (1974), 417 U.S. 506, 511, 94 S.Ct. 2449, 2453, 41 L.Ed.2d 270.
¶70 The Supreme Court has also held, however, that if a state law governs issues concerning the validity, revocability and enforceability of contracts in general-see, Perry v. Thomas (1987), 482 U.S. 483, 492, n. 9, 107 S.Ct. 2520, 2527, n. 9, 96 L.Ed.2d 426-then generally applicable contract defenses, such as fraud, duress or unconscionability, may be applied to invalidate arbitration agreements without contravening Section 2 of the FAA. Doctor’s Associates Inc., v. Casarotto (1996), 517 U.S. 681, 687, 116 S.Ct. 1652, 1657, 134 L.Ed.2d 902 (citing Allied Bruce, 513 U.S. at 281, 115 S.Ct. at 843; Rodriguez de Quijas v. Shearson/American Express, Inc. (1989), 490 U.S. 477, 483-84, 109 S.Ct. 1917, 1921-22, 104 L.Ed. 2d 526; Shearson/American Express, Inc., v. McMahon (1987), 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed 2d 195).
¶71 In this regard Montana has long subscribed to the rule that contractual waivers of constitutional rights must be evaluated in that light and by the tests applicable to the waiver of constitutional rights. May v. Figgins (1980), 186 Mont. 383, 394, 607 P.2d 1132, 1138. In May, we recognized the general rule that parties could contract in advance to submit to in personam jurisdiction of a given court-there, Colorado. Nonetheless, we refused to uphold that sort of contract provision where the Colorado court was unable to exercise in personam jurisdiction consistent with due process. We reasoned that the contract provision amounted to a forfeiture of the constitutional right of due process, and that there was no “clear waiver” because the party charged with the waiver could not have known that the agreement he signed subjected him to the jurisdiction of the Colorado courts. In *146 reaching this conclusion we pointed out that there was nothing in the agreement that specified the jurisdiction as to which the charged party waived his constitutional due process rights. May, 186 Mont. at 394, 607 P.2d at 1138 (citing Fuentes v. Shevin (1972), 407 U.S . 67, 95, 92 S.Ct. 1983, 2001, 32 L.Ed.2d 556 (The right of jury trial is fundamental and courts indulge every reasonable presumption against waiver.)).
¶72 Quoting Telephonic, Inc. v. Rosenblum (1975), 88 N.M. 532, 543 P.2d 825, 830, we observed that, “ ‘[a]n agreement to waive this constitutional right must be deliberately and understandingly made, and the language relied upon to constitute such a waiver must clearly, unequivocally and unambiguously express a waiver of this right.’ ” May, 186 Mont. at 394, 607 P.2d at 1138-39. We then went on to state that:
To accept the respondent’s argument that the defendant here contractually consented to be sued in Colorado would be to give the respondent carte blanche to use contracts of adhesion to establish a right to sue defendants wherever would be most convenient to respondents, and least convenient to defendants. The contractual provisions purporting to waive in personam jurisdiction are unreasonable and unenforceable.
May, 186 Mont. at 395, 607 P.2d at 1139.
¶73 Similarly, but with a contrary result, we upheld a provision whereby a party contracted away his right to the statutory exoneration of his suretyship because the waiver of rights did not involve “a constitutional right, nor a waiver in violation of public policy.” Montana Bank of Circle, N.A., v. Ralph Meyers & Son, Inc. (1989), 236 Mont. 236, 241, 769 P.2d 1208, 1212.
¶74 As discussed above, Montana law generally applicable to the waiver of constitutional rights, requires that the waiver will not be lightly presumed; that it must be proved to have been made voluntarily, knowingly and intelligently-typically by the party seeking the waiver; and that it will be narrowly construed. See ¶ 64 infra. Importantly, Montana applies these same principles in cases where there is a purported contractual waiver of constitutional rights. Such a contractual waiver “ ‘must be deliberately and understandingly made, and the language relied upon to constitute such a waiver must clearly, unequivocally and unambiguously express a waiver of this right.’ ” May, 186 Mont. at 394, 607 P.2d at 1138-39.
¶75 In this case, as already noted, there is no evidence in the record before us that Kloss voluntarily, knowingly and intelligently waived her fundamental constitutional rights to a jury trial and to access to *147 the courts when she signed Jones’s standard-form contracts. Rather, the record demonstrates the contrary. Thus, Kloss’s purported waiver of her rights to a jury trial and of access to the courts was not an effective waiver in a constitutional sense.
¶76 That being the case, and under principles of Montana law generally applicable to all contracts, Kloss’s contract with J ones cannot be enforced, at least to the extent of the arbitration clause.
¶77 Accordingly, for the reasons set forth in our Opinion and in this separate Opinion, I concur.
JUSTICES TRIEWEILER, LEAPHART and COTTER join in the foregoing concurrence.
ORDER ON PETITION FOR REHEARING
The Respondents, Edward D. Jones & Co. and Paul Husted have petitioned this Court pursuant to Rule 34, M.R.App.P., for rehearing. Rule 34 provides in part:
A petition for rehearing may be presented upon the following grounds and none other: That some fact, material to the decision, or some question decisive of the case submitted by counsel, was overlooked by the court, or that the decision is in conflict with an express statute or controlling decision to which the attention of the court was not directed.
Respondents raise several bases for rehearing. However, we limit our consideration to Respondents’ contention that this Court overlooked a material fact when it stated in ¶ 36 of its Opinion that Jones and Husted had discretion to buy and sell securities pursuant to Kloss’s 1992 agreement with them. Respondents contend that although Kloss entered into a Full Service Agreement with Jones in 1992 and although there was a provision in the agreement entitled “Customer Loan Agreement” which did authorize Jones and Husted to buy and sell securities, Kloss did not exercise that option.
In response, the Appellant, Alice P. Kloss, points out that whether or not she was a party to the “Customer Loan Agreement” in 1992, a similar or identical provision giving Jones and Husted discretion to buy and sell securities was a part of her 1998 agreement and it is pursuant to that agreement that she contends that Respondents breached their fiduciary duty. Kloss is correct.
Therefore, we deem it appropriate to grant the Respondents’ Petition for Rehearing to the extent that the year “1992" in the second line of ¶ 36 is stricken and the year “1998" is substituted therefore.
The Respondents’ Petition for Rehearing not otherwise satisfying the requirements of Rule 34, M.R.App.P., is DENIED.
*147a The Clerk of the Supreme Court is directed to mail a copy of this Order to Robert F. James, P.O. Box 1746, Great Falls, Montana 59403, and to Joseph C. Engel, P.O. Box 3222, Great Falls, Montana 59403.
DATED this 25th day of September, 2002.
JUSTICES TRIEWEILER, NELSON and COTTER concur.

 1 have limited my analysis and discussion to these two constitutional rights because these are the two raised in this case. In saying that, I recognize, however, that other constitutional rights may be implicated in these sorts of cases, including the right to due process of law (Article II, Section 17, Montana Constitution) and equal protection of the laws (Article II, Section 4, Montana Constitution). Moreover, as our Opinion points out, arbitration results in the loss of certain procedural rights such as the right to engage in discovery and the right to have the admissibility of evidence judged under the Montana Rules of Evidence. Additionally, the right to judicial review of arbitration decisions is severely restricted-i.e. effectively there is no right of appeal from these *138 decisions.

 Jones relies on Passage v. Prudential-Bache Sec., Inc. (1986), 223 Mont. 60, 727 P.2d 1298, Larsen v. Opie (1989), 237 Mont. 108, 771 P.2d 977; Kingston v. Ameritrade, Inc., 2000 MT 269, 302 Mont. 90, 12 P.3d 929; and Southland v. Keating (1984), 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1, in opposing Kloss’s waiver argument. As to this Court’s opinions, while we upheld the arbitration agreements at issue in those cases on various grounds, we did not address the argument raised here-i.e. whether the rights to trial by jury and access to the courts under Article II, Section 26 and Article II, Section 16, may be forfeited by contractual waiver that is other than voluntary, knowing and intelligent. Similarly, the Supreme Court did not address the waiver of the Seventh Amendment right to jury trial in Southland. In fact, the U.S. Supreme Court has not addressed this argument in the context of any arbitration case.

 A cursory review of the literature will reveal not only the substantial and growing support for my conclusion but also will provide citations to a multitude of cases which detail the horror stories of corporate abuse of ordinary citizens and small business people by way of the inclusion of mandatory arbitration clauses in contracts of adhesion. See, e.g., Jean R. Sternlight, Mandatory Binding Arbitration and the Demise of the Seventh Amendment Right to a Jury Trial (2001), 16 Ohio St. J. on Disp. Resol. 669; Margaret M. Harding, The Redefinition of Arbitration by Those with Superior Bargaining Power (1999), 1999 Utah L. Rev. 857; Katherine Van Wezel Stone, Rustic Justice: Community and Coercion Under the Federal Arbitration Act, 77 N.C. L. Rev. 931 (1999); Reginald Alleyne, Statutory Discrimination Claims: Right “Waived” and Lost in the Arbitration Forum (1996), 13 Hofstra Lab. L. J. 381, to name just a few.
That said, there is also little point railing against the present state of the law “favoring” arbitration. See, Moses H. Cone Memorial Hosp. v. Mercury Const.Corp. (1983), 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765.1 will note, however, that arbitration, historically, was designed as a method of alternative dispute resolution between merchants of equal sophistication and bargaining power (see Jerold S. Auerbach, Justice Without Law? 101-114 (1983); IanR. MacNeil, American Arbitration Law 15-25 (1992)); that during the deliberations leading up to the passage of the Federal Arbitration Act (FAA), the proponents, drafters and sponsors-Senator Walsh from Montana, among others — were extremely concerned that the inclusion of arbitration clauses in adhesion contracts be voluntary because of the concomitant loss of the right of jury trial and court access {see, the excellent discussion of this point in Allstar Homes, Inc. v. Waters (1997, Ala.), 711 So.2d 924 (Cook, J. concurring); and that, with due all deference to the Supreme Court of the United States, Justices Thomas’s and Scalia’s criticism of Southland and its progeny and their conclusion that these cases should be overruled to the extent that they apply the FAA in state court proceedings is dead right. See, Allied-Bruce Terminix Companies v. Dobson (1995), 513 U.S. 265, 283, 115 S.Ct. 834, 844, 130 L.Ed.2d 753 (Scalia, J. and Thomas, J., dissenting).